# CASES

### IN THE

# SUPREME JUDICIAL COURT

### IN THE

### COUNTY OF WASHINGTON, JUNE TERM, 1833.

---

## BUCK vs. PIKE.

*Brewer*, bargained with *Munroe* for a lot of land, and caused it to be conveyed to *Downes*, the latter signing a note with him as surety for the purchase money. *Brewer* then assigned his interest in the land to *Buck*, as trustee for the benefit of his, *(Brewer's)* creditors; and afterwards, *Downes* becoming dissatisfied with his situation, *Brewer* requested *Pike* to take a deed of it and hold for him, paying to *Downes* the amount of his lien upon it; to which *Pike* consented. *Buck*, then brought a suit at equity to compel *Pike* to convey to him, tendering the amount of *Pike's* payments to *Downes* with interest, and by the Court it was held : —

That, the conveyance from *Munroe* to *Downes*, created by implication of law, a resulting trust in favor of *Brewer* : —

That, this trust with which the land was chargeable, enured to the benefit of *Buck*, in the conveyance from *Downes* to *Pike ;* and that the latter took the land subject to it : —

That, *parol proof* was admissible to show the payment of the purchase money by *Brewer*, though in *contradiction of the deed* from *Munroe* to *Downes* : —

That, to raise a resulting trust by implication of law in favor of one who pays the purchase money, the payment must be a part of the original transaction — the trust cannot arise from *subsequent payments* :

That, the acceptance of a *promissory note* by the grantor, instead of money, may be regarded as such payment.

THIS was a bill in equity; an abstract of which was as follows, viz. The complainant alleged, that on the 20th of *December*, 1823, one *Artemas Ward*, in consideration of $2000, con-

VOL. II.  2

veyed to *Asa A. Pond* 87 acres of land in *Calais*, called the *Terrol* lot, and on the same day took back a mortgage to secure the purchase money.

That on the 16th of *February*, 1827, *Pond's* right in equity was attached by his creditors and afterwards on the 30th of *August*, 1828, was purchased at a sheriff's sale by *Edmund Munroe.*

That on the 3d of *April*, 1827, *Pond* conveyed one acre thereof to *Thomas A. Brewer*, who, on the same day, conveyed the same land in mortgage to *George Downes*, to secure the payment of $1443,03.

That on the 21st of *July*, 1829, *Brewer* conveyed the acre in question to *Buck*, the complainant, in trust to pay $2964,61 to certain creditors of said *Brewer.*

That on the 20th of *November*, 1829, *Ward* assigned *Pond's* mortgage of the 87 acres to said *Munroe*, who thereupon claimed to be owner in fee.

That on the 16th of *June*, 1830, *Munroe* demanded $300 of *Brewer* for the acre purchased of *Pond* as aforesaid, and conveyed the same to *George Downes* at the request of *Brewer*, who, finding himself liable to be evicted by an elder and better title, *paid the consideration therefor*, at the time, by his negotiable promissory notes, *himself as principal* and *Downes as surety*, whereby a *trust resulted to said Brewer for the benefit of the complainant.*

That on the 15th of *October*, 1830, *Downes* being unwilling longer to hold said estate as mortgagee and trustee, requested *Brewer* to appoint some other person to assume his liability ; and *Downes*, at the request of *Brewer*, conveyed the same to *William Pike*, the defendant, to discharge himself of said trust, to whom *Brewer*, at that time made known the nature and character of said *Brewer's* interest in the premises, and that said *Downes* held the same as a mortgagee and trustee of said *Brewer*, and that said *Pike* then and there consented and agreed to take the place of said *Downes*, and to hold the estate in trust and for the benefit of said *Brewer*, subject to the payment of whatever balance should be found due to said *Downes* on his mortgage of the 3d of *April*, 1827, and for his liability as surety to said *Munroe* on his note as aforesaid, which was ascertained to be $678,08.

That said *Pike* on the 15th of *October*, 1830, mortgaged the said acre to said *Downes* to secure the $678,08.

That on the 10th of *January*, 1831, and at divers other times said *Brewer* paid said *Downes*, in discharge of said *Pike's* liability to him, $103.

That on the 17th of *May*, 1832, *Brewer*, in consideration of $100, released his interest in the premises to the complainant, in trust as aforesaid.

That on said 17th of *May* the complainant tendered to *Pike*, in discharge of his liability as aforesaid and for his services and expenses as *Brewer's* trustee, $645 and requested his consent that said *Downes* who then held the same in mortgage, might convey the premises to the complainant, and that he refused his consent.

After certain interrogatories proposed to the defendant, the Bill closed with a prayer that *Downes* might be required to receive the balance due him on said mortgage of *Pike* and to discharge the same ; and that said *Pike* might be required to accept the tender made as aforesaid, and to convey the premises to the plaintiff for the purposes of the trust aforesaid, and for further relief.

The defendant in his answer to the Bill and interrogatories, admitted the conveyance from *Ward* to *Pond* and mortgage back ; that *Pond's* right in equity was attached and sold as set forth in the Bill; the conveyance from *Pond* to *Brewer* of the acre and mortgage to *Downes* by *Brewer;* that improvements thereon were worth $1200 ; the assignment of *Pond's* mortgage to *Munroe* as to part, but required proof that the acre in question was assigned and that the consideration was $2000. Denied any knowledge of mortgage by *Brewer* to the complainant, and required proof of debt of $2964,61 alleged to be due from *Brewer* to plaintiff and others.

He then set forth, that, on the 16th of *June*, 1830, the said *Brewer* considering himself liable to be evicted from said acre by said *Munroe*, to secure his improvements and the safety and indemnity of said *Downes*, gave *Munroe* his negotiable promissory notes for $325, signed by himself and by said *Downes* as his surety, and that, thereupon with the assent of *Brewer*, *Munroe* released his lien on said acre to *Downes*, at *Downes'* request, and

for his security and benefit, and in order to avoid a suit upon the covenants of his mortgage deed to said *Downes.*

That before the transactions aforesaid, *Pike* had been a member of the house of *N. D. Shaw & Co.* of which *Brewer*, his brother-in-law, was a member; that *Pike* withdrew, transferring his interest to the remaining members of the firm, who undertook to indemnify him against their debts. That *N. D. Shaw & Co.* became insolvent, and left *Pike* exposed in person and property to a large amount without indemnity. That while the defendant was thus situated, in order, as he was induced to believe, to enable him to make himself secure, as far as said acre would go, *Brewer* informed him that he could not pay the money due *Downes*, and advised the defendant to pay *Downes* and take a deed of the premises to himself for his own absolute benefit.

He denied knowledge of the complainant's mortgage or any other title than that of said *Downes*, either before, at the time, or until long after any transaction alluded to in the Bill. Averred that he made inquiry of *Brewer*, at the time, as to title, and *Brewer* declared he had made no conveyance to any person except *Downes*, and that no other person had any claim upon the same; and being informed by *Downes* that the title to the premises was absolute in him, he agreed to buy said acre for the amount then due from *Brewer* to *Downes*, provided *Brewer* would agree to make the first payment to said *Munroe*, being $100, part of $325; which *Brewer* promised to do. He thereupon, on the 15th of *October*, 1830, purchased of *Downes* the premises, taking his legal conveyance of the same, and gave his notes and mortgage therefor for $678, for his own use and benefit, and not in trust or for the benefit of said *Brewer*, not having at the time of the conveyance, any knowledge or information of the plaintiff's title. He therefore insisted, that the legal and equitable title was in himself against the complainant. He denied that *Brewer* requested him to take *Downes'* place as trustee of the property of *Brewer*; or that *Brewer* made known to him any interest of his in the premises, other than is herein set forth, and that he was advised of any equitable interest therein as the plaintiff has alleged.

He averred, that, at the time of his purchase, *Brewer* told him that it was out of his power to pay *Downes* the amount due to

him, or to pay the $325 to *Munroe*, and that he, the defendant, was induced to believe, and did believe, said estate must therefore continue to belong to *Downes*, unless the defendant should deem it for his interest to purchase the same, as aforesaid, for the sake of obtaining indemnity for losses he was about to sustain, out of any small excess of value, of said estates, over and above what he might pay said *Downes* for the same, which he accordingly did.

He denied knowledge of any payments made by *Brewer* towards the $678; but when the first payment to *Munroe* of $100, which *Brewer* had agreed to pay, fell due, *Downes* called on the defendant to pay it, and the defendant called on *Brewer*, who being unable to pay, the defendant loaned him $50 for that purpose and charged it to him. *Downes* also paid a part of it — after which the defendant took it up, refunded to *Downes* what he had paid, and charged the amount to *Brewer*.

He denied that he ever called on or expected *Brewer* to pay any part of the moneys for which said *Downes* was holden, or of that which was due to *Downes*, except the $100, but always expected to pay the same out of his own moneys and has accordingly so paid the same in full to the amount of $678.

He then alleged that since the conveyance to him from *Downes*, *Thomas Lord & Co.* sued *N. D. Shaw & Co.* and attached *Brewer's* goods to the amount of about $1200, which were delivered the plaintiff and others by the attaching officer, for safe keeping, to be redelivered on execution; which goods the plaintiff applied towards his own claim against *Brewer*, without the consent of the defendant, by means of which the defendant was afterwards obliged to satisfy said judgment of *Thomas Lord & Co.* to the amount of $1700, out of his own private estate.

That, the defendant has been compelled to pay and satisfy out of his own property, divers other debts due by said *N. D. Shaw & Co.* for which he has not been reimbursed, and is damnified to a greater amount than $1500.

He admitted the tender of $645, but denied the right of the plaintiff to redeem or obtain the premises by the payment of any sum whatever; but if he had such right, then the defendant denied the sufficiency of the tender as to amount.

He denied that the notes for the $1403,03 were ever paid and adjusted by *Brewer* as the plaintiff alleges, or that they ought to have been given up to *Brewer*, or that they were delivered to the defendant by mistake; but alleged that at the time of his purchase, *Downes* endorsed and delivered said notes, and assigned said mortgage, to the defendant, the more perfectly to assure to him the absolute and indefeasible title to the premises.

He did not know how far *Brewer* had discharged his liabilities to *Downes*, but averred that, as well said notes uncancelled, and the assignment of the mortgage given to secure the same, as the absolute deed of said *Downes* to him of the premises, formed the consideration for which he undertook to pay said *Downes*, and did pay, the sum of $678 aforesaid.

He admitted that, prior to his purchase, both *Brewer* and *Downes* did inform him, that *Downes* held the premises originally by mortgage from *Brewer*, and subsequently by absolute deed from *Munroe*. But said, that they represented the title in the premises to be absolute and indefeasible, and denied that he had any knowledge of any other title to the same either at law or equity.

He admitted that *Brewer* had ever since his purchase occupied the premises — that, there was no special agreement as to rent — that, none had been paid — that, he had demanded none because *Brewer* was poor, and was a near relative by marriage; but, he insisted upon his legal right to claim rent for the premises, against *Brewer* and all other persons.

Denied, that, he ever called on *Brewer* to pay any part of the consideration, except the $100, which he had agreed to pay and did not; — that, he considered *Brewer* his debtor for what he, the defendant, had paid of that first payment, and had accordingly charged him $103,30; — but, that he had charged him with no other money paid for the premises; — that, the whole amount paid, had been from his own moneys, and that no part of it had been furnished by *Brewer;* — that, he, the defendant, expected and intended, to account to said *Brewer*, on a final adjustment of this affair, for said first payment to said *Munroe*, of $100, if he, *Brewer*, had paid it.

There was much testimony introduced by both parties — but the following is all that is deemed material to a right understanding of the case.

Complainant's evidence.

1. Extracts from the books of the defendant.

" *Thomas A. Brewer*, Dr.

" 1831, *Jan.* 5.   To cash paid *George Downes* on note to
"                                    E. *Munroe*,       -       -       -       $40,
"                                    " interest on do.       -       -       -       ,24
"       *Jan.* 10.   " cash paid on same note, *Nov.* 10,       50,
"       "       "       " cash paid, balance of yr. note and
"                                    interest,       -       -       -       -       12,50
                                                                    ————
                                                                    $103,33

### Cr.

" 1832, *Jan.* 15.   By this sum charged to *Brewer* house, $103,33

" *Brewer* house to sundries                       Dr.

" 1832, *Jan.* 5.   To amount of note paid *Munroe*, charg-
"                                    ed *Brewer*,       -       -       -       $103,33
"                                    " paid *Samuel Wheeler* for amount of
"                                    *Brewer's* note to *Jan.* 5,       341,48
"                                    " interest — amount for interest acct.       4,63
"       "       *July* 5.   " my draft to *Downes*, dated *June* 5,       262,77
"       "       *Aug.* 2.   " paid *George Downes* balance of my
"                                    note,       -       -       -       -       -       28,25       .

2. Deposition of *Edmund Munroe*.

The deponent confirmed the statements of the Bill, in regard to the bargain to sell the acre to *Brewer*, the consideration paid, by whom, and the conveyance to *Downes*. He stated further, that *Brewer* was in possession of the land at the time, and had made the improvements that were upon it.

3. Deposition of *George Downes*, in which he stated, that, on the 3d of *April*, 1827, *Brewer* conveyed to him the lot in question, in mortgage, to secure the payment of $1443,03, for which sum *Brewer* gave him his notes at that time. — That, he never gave any value for said notes, but that the transaction was a friendly one, between *Brewer* and himself, to preserve his pro-

perty from sacrifice, for the debts of *Neal D. Shaw & Co.* which firm had failed, and of which said *Brewer* was a member.

He then related the transaction of the purchase by *Brewer* of *Munroe*, the consideration paid, by whom, and the conveyance to himself, conformably to the statements in the Bill. Previously, however, to the conveyance from *Munroe* to him, *Brewer's* note to *Samuel D. Wheeler*, assignee of *N. D. Shaw & Co.*, and a note in favor of *Perry & Lincoln* came into his, the deponent's, hands, which, it was understood, he should hold secured by the mortgage.

The deponent then related the circumstances of his being dissatisfied with his situation — requesting *Brewer* to procure some one to take his place — *Brewer's* request to convey to *Pike* — the conveyance accordingly — the payment by note of $678,08 by *Pike*, — and the mortgage to secure the payment — in substance as set forth in the Bill.

He also stated, that *Pike* at various times had paid him the $678,08 and interest — That on the 7th of *May*, 1832, *Buck* tendered him $645, and demanded a discharge of *Pike's* mortgage, which he refused to do, by direction of *Pike*. — That he estimated the property at the time he took it, at the sum of $1500, though now worth $2300. — Did not recollect that he told *Pike*, at or before the time of the conveyance to him, that he, deponent, held the property exclusively for the benefit or interest of *Brewer*. — That, he knew nothing of the plaintiff's claim, at or before the time of his conveyance to *Pike*. — That, he told *Pike* at the time of the conveyance, that his title was good, and that he would hold through or under the deed from *Munroe*. — That, he passed over to *Pike*, at the time, *Brewer's* notes for $1443,03 — did not state to him that they were given without any value received for them — *Pike*, however, paid no consideration for them, when endorsed to him, but that he, deponent, handed them to *Pike*, as a part of the transaction between him and *Brewer*.

*Thomas A. Brewer*, in his deposition, stated, that on the 21st of *July*, he was indebted to *Buck & Tinkham* and others, in the sum of $2964,61, to secure which, he conveyed the premises to the plaintiff, in trust for the payment of his several creditors nam-

ed in the instrument of conveyance. — That he, deponent, was in possession at the time, and had been ever since, under a lease from the plaintiff. (The deed and lease were annexed). — That, the improvements on the lot were worth from $1500 to $2000.

The deponent then related the circumstances, substantially as set forth in the bill, relative to his purchase of *Munroe* — the conveyance to *Downes* — the amount and mode of payment of consideration — the dissatisfaction of *Downes* — his procurement of *Pike* to take his place — the conveyance to *Pike*, &c. — He deposed further, that, at the time of the conveyance, he informed *Pike* of the situation of the property, and asked him to take it and hold it for him — that he stated to him, he would pay the amount due to *Downes* if he could, but if he could not, wished the defendant, *Pike*, to assist him, which he promised to do. — He stated further, that *Pike* frequently called on him, at first, to pay for the land, but he did not pay more than $50, because it was inconvenient for him.

On cross examination, he stated that at the time of his conveyance to the plaintiff, for the benefit of himself and others, the sum of $2964,61 was actually due to them, but that since that time, he had paid to *Buck & Tinkham*, in part of their claim, $700; to *Joseph C. Noyes*, his whole demand, about $400; and to *George & J. Hobbs*, about $250.

That his goods that were attached by *Thomas Lord & Co.* were receipted for by the creditors named in the conveyance to *Buck*, and were left in his, deponent's possession — the execution when obtained, was satisfied, as he believes, from the property of *Neal D. Shaw & Co.*

That, all the agreement that was made by *Downes* to hold the land for his, deponent's, benefit, was made prior to the conveyance from *Munroe*.

*Neal D. Shaw*, stated in his deposition, that as agent of *Samuel Wheeler*, assignee of *Neal D. Shaw & Co.* he paid to *Isaac Clapp*, of Boston, between the years 1827 and 1830, the sum of $2323,27. This sum was afterwards claimed by *William Pike*, the defendant, on the ground of his preference in the assignment to *Clapp*. That a short time since, the matter was settled with

*Pike*, he relinquishing $1000 of the amount, and the balance being paid him by the agent of *Clapp*. That, *Pike* stated at the time, that he claimed the balance because he was secured in the assignment of *N. D. Shaw & Co.* for his liabilities as a member of the firm. That, *Pike* left the firm before its failure, but not giving legal notice, he was held liable for certain debts of the firm.

Evidence introduced by the defendant:

Second deposition of *Neal D. Shaw*, in which he stated that the execution for about $1700 recovered by *Thomas Lord & Co.* against the firm of *N. D. Shaw & Co.* since its failure, was paid by *William Pike*; and that there are still outstanding debts against the firm for which *Pike* is liable.

Second deposition of *George Downes*, in which he stated that, from his knowledge of the amount of debts of *N. D. Shaw & Co.* he should not think the property conveyed by *Brewer* to him on the 3d of *April*, 1827, would be any more than his proportion of said debts, provided *Pike* paid no part thereof. — That, he did not recollect of telling *Pike* at the time of his conveyance to him, or at any time prior thereto, that he held the property in trust for *Brewer* — and thought he never did tell *Pike* so. — That he did not tell him that the notes for $1443,03 were of no value. — That he did not tell *Pike* the conveyance to him was for the benefit of *Pike* or any one but himself.

The case was argued in writing by *Hobbs* for the plaintiff and *Greenleaf* for the defendant.

The following points were made by the counsel for the plaintiff: —

1. That by the conveyance from *Munroe* to *Downes* on the 16th of *June*, 1830, in the manner and under the circumstances of the case, a trust estate resulted to *Brewer*, by operation of law.

2. That, therefore, *Pike* was not entitled to hold against the complainant — he having had notice, actual or constructive, at the time of the conveyance to him — or at all events having had the means of notice, while the purchase money remained in his hands unpaid.

3. That, inasmuch as the mortgage to *Downes,* of 3d of *April,* 1827, was fraudulent as to creditors, the trust estate·of *Brewer* enured to the benefit of the complainant as first mortgagee. *Brewer* having before the conveyance from *Munroe* to *Downes,* for a valuable consideration, mortgaged the same to the complainant.

4. That no tender was necessary, but if otherwise, that more than sufficient was tendered.

5. That the liabilities of *Pike* on account of *Brewer,* if any exist, or have existed, raise no equity in his favor against the complainant's title.

The following authorities were also cited on the same side, viz: *Powell & ux.* v. *B. & M. Manufacturing Co.* 3 *Mason,* 361; *Sugden on Vendors,* 414; *Fonbl. Eq. Book* 2, *ch.* 5, *sec.* 1; *Boyd* v. *McLean,* 1 *Johns. Chan. Rep.* 582; *Botsford* v. *Burr,* 2 *Johns. Chan. Rep.* 405; *Peebles* v. *Reading,* 8 *Serg. and Rawle,* 492; *Wallace* v. *Daffield,* 2 *Serg. and Rawle,* 592; 2 *Mad. Chan.* 112 *et seq.* and cases there cited. *Maneely* v. *McGee,* 6 *Mass.* 145; *Thacher & al.* v. *Dinsmore,* 5 *Mass.* 299; 2 *Mad. Chan.* 129; *Bond* v. *Kent,* 2 *Vern.* 280; *Fonbl. Eq.* 442; *Murray* v. *Ballou,* 1 *Johns. Chan. R.* 567; *Wilson* v. *Mason,* 1 *Cranch,* 100; *Frost* v. *Beekman,* 1 *Johns. Chan. R.* 300, and cases there cited. *Smith* v. *Low,* 1 *Atk.* 490, *Fonbl. Eq.* 447; *Jewett* v. *Palmer,* 7 *Johns. Chan. R.* 68; 8 *Wheaton,* 449; *Townville* v. *Nash, Bridgman's Eq. Dig.* 690; 3 *Serg. & Rawle,* 434; 2 *Atk.* 60; 2 *Mad. Chan.* 158.

Argument for the defendant:

The counsel for the defendant first dwelt at considerable length on those parts of the case showing strong equitable considerations in favor of the defendant.

2. *Nothing passed to Buck by the deed from Brewer to him of July* 21, 1829. No *title passed,* for *Brewer* had none. The only title he *ever* had was a right in equity of redemption from *Pond,* subject to a *prior attachment;* and this attachment was followed by judgment and execution, and the right sold to *Munroe,* who afterwards and prior to *July* 21, 1829, took an assign-

ment of the original mortgage held by *Ward;* thus uniting in himself both titles, and wholly displacing that of *Brewer.*

. *Nor had Brewer any adverse possession.* He always had holden in submission to the title acquired by *Munroe.* And he ever afterwards has continued to hold in the like manner, as a mere tenant at will under that title; and as such he attorned to *Downes* in *June,* 1830, and again to *Pike* in *October* of the same year.

It was the case of a tenant at will or by sufferance, executing a deed to a stranger in fee, but remaining in possession as before; and afterwards yielding up the possession peaceably to the true owner. If the stranger could have acquired any rights in such a case, they were defeated by the entry of the owner of the fee, viz: *Munroe.*

3. It results also from this view of the case that *nothing* passed to *Downes* by the mortgage of *April* 3, 1827, which therefore must be laid out of the case. Or if any right was created by that deed, it was displaced by the subsequently perfected and paramount title in *Munroe,* to the whole property.

4. The main position however in the case is this, that, *the conveyance from Munroe to Downes, June* 16, 1830, *did not create a resulting trust to Brewer.*

It is true, *Downes* says he took the deed from *Munroe* to himself for *Brewer's* benefit; but his intentions, or those of the other party, to do a *kindness to Brewer,* form no foundation whereon the law will raise a trust. 2 *Johns. Ch.* 409. *Brewer* had erected buildings on the land, but they were forfeited to *Munroe;* who, however, was willing to convey a title on receiving the value of the *land,* exclusive of the improvements. And *Downes* was willing to do the same. The utmost that can be inferred from this part of the case, is the *purpose* of the parties to give *Brewer* the right of pre-emption. But the trust which the law raises by implication, results only to him who pays the consideration money. And the question is, has *Brewer* paid it?

His *agreeing* to pay it, is no payment. For though *Munroe* accepted the note of *Brewer* and *Downes* as satisfactory *security* for the money; yet it was *Downes'* name *alone* which gave the security its value; and if the giving of a *security* is such a pay-

ment as raises a trust, the trust clearly resulted to *Downes*, and not to *Brewer*. But it must be such a payment, at least, as, if made for a third person, would furnish ground for an action of money laid out and expended. But it is well settled that the *giving of a note* will not sustain such an action, unless the money has been paid. *Douglass v. Moody*, 9 *Mass.* 548; *Taylor v. Higgins*, 3 *East*, 169; *Cumming v. Hackley*, 8 *Johns.* 202. It is true that it has been said that the giving of a *negotiable* note *may*, in some cases, be equivalent to the payment of money, so as to entitle the party to his action; especially where the note has already been negotiated. But such exceptions are questioned; and this is not that case; for here *Brewer* is not liable to be called upon for a dollar. *Downes* cannot call on him; for he has paid nothing; nor can *Pike*, for he has received the value of all he has paid.

This position is confirmed by analogy to the case of a mortgage; which is never discharged by any renewal or change of *security*, so long as the *money* has not been paid. See *Davis v. Maynard*, 9 *Mass.* 242; *Cary v. Prentiss*, 7 *Mass.* 63; *Elliot v. Sleeper*, 2 *N. H. Rep.* 525. *Watkins v. Hill*, 8 *Pick.* 522.

The whole foundation for a resulting trust is the actual "*payment of the money*. And this must *be clearly proved*." *Willis v. Willis*, 2 *Atk.* 71; 2 *Johns. Chan.* 415. "If therefore the party who sets up a resulting trust made no *payment*, he cannot be permitted to show, by parol proof, that the purchase was made for his benefit or on his account." *Bottsford v. Burr*, 2 *Johns. Chan.* 409; 1 *Cruise's Dig. tit. Trust*, ch. 1, sec. 43, 44; *Goodwin v. Hubbard & al.* 15 *Mass.* 218. "The trust arises out of the circumstance that the moneys of the real, and not of the nominal purchaser, formed, *at the time*, the consideration of that purchase, and *became converted into the land*. *Bottsford v. Burr*, before cited. So said *Ld. Hardwicke*, "where one person *pays* the purchase money." *Young v. Peachy*, 2 *Atk.* 257; 2 *Mad. Chan.* 113, 114. To adopt any principle short of this would work monstrous injustice. In the present case it might have led to this consequence, that *Mr. Downes* might have been compelled to pay the money, and any other creditor of *Brewer* have obtained the land. The question is, not who *promised to pay*, but,

*whose money was actually converted into land?* For equity treats the land and the *money* (not the *note*) as the same thing.

Now how stands the *proof* of the payment of the money? In the first place, the defendant. objects that parol proof, though generally admissible to raise a resulting trust, yet is not admissible where it goes to *contradict a deed,* except upon the allegation of fraud. This is clearly laid down in *Northampton Bank* v. *Whiting,* 12 *Mass.* 109; and two years afterwards by *Chancellor Kent* in 2 *Johns. Chan.* 415. The doctrine of implied trusts was said by him, in the same place, to be " a very questionable doctrine," even when limited strictly to the case of an " *actual payment of money*" — and in *Boyd* v. *McLean,* 1 *Johns. Chan.* 582, he says that parol evidence in these cases is " to be received with great caution." In the present case the *deed* declares that the consideration was paid by *Downes.* On what principle can the plaintiff be allowed to contradict this by *parol?*

In the next place the testimony of *Brewer* to this point is inadmissible; because he is *directly interested* to set up a trust estate in himself. If the plaintiff prevails, the estate goes to the benefit of *Brewer,* by extinguishing so much of his debts. And if the plaintiff loses, there is no ulterior liability of *Brewer,* to balance his interest.

But if the testimony be admissible, still the evidence does not show that *Brewer* paid any part of the consideration money. [The defendant's counsel here went into a particular examination of the testimony touching this point.]

But if *Brewer had paid any thing,* the question would arise whether parol proof is admissible not only to raise an implied trust, but *also to establish the nature of the estate* to be holden, and the *portions to be allotted among the several tenants in common* who may have advanced the money. *Ld. Hardwicke,* in *Cross* v. *Norton,* 2 *Atk.* 74, limited this doctrine of implied trusts to cases where all the money was paid by *one person;* but though this is doubted by *Chancellor Kent* in 2 *Johns. Chan.* 410, yet the latter holds that where one has paid *part only,* he can only claim to charge the land *pro tanto.* Now the price was $678, and if *Brewer* had paid any part of this sum, he could, at

Buck *v.* Pike.

best, only charge such portion of the land as the sum he paid bore to the whole purchase money.

5. But there is still another ground on which *Pike* is entitled to hold this land, even if there had been originally a trust raised to *Brewer* by implication of law, by reason of the deed from *Munroe* to *Downes*. For the defendant bought not only *without knowledge of any such trust*, but *under assurances of the most positive character, both from Brewer and Downes, that the latter held the absolute and indefeasible title*. The registry of *Buck's* deed shows nothing to the contrary. It was made before this pretended trust was created.

The position of the plaintiff is denied, " that if the defendant *had notice* of the trust before he paid all the purchase money, it is sufficient to charge him" — and to this point cite 4 *Kent's Com.* 307, *2d ed.* and cases there cited.

WESTON J. at a subsequent term, delivered the opinion of the Court.

Waiving for the present the effect of the mortgage made by *Brewer* to *Downes*, in *April*, 1827, and its assignment to the defendant, it becomes necessary to consider, whether, while *Downes* held the land in controversy, he held it in trust for *Brewer*. There was no declaration of trust in writing, and if any existed, it must have been what is termed in law a resulting trust. As jurisdiction of trusts generally, without qualification or exception, is given to this Court, wherever they arise, according to the settled practice of a court of equity, they must be recognized and enforced. *Sugden*, in his law of vendors, 443, *Philadelphia* edition, states the law to be, without a single exception, bearing upon this point, that if one man purchase an estate in the name of another, a trust results to him, who advances the purchase money. He cites a large number of authorities to sustain his position, to which cases in this country are added by the American editor. It is treated by *Chancellor Kent*, in *Boyd* v. *McLean*, 1 *John. Chan.* 582, as a well known and a universally admitted rule in equity. As it is not controverted by the counsel for the defendant, it cannot be necessary to advert further to the authorities. But it is a well settled part of the doctrine, that it should appear

that the payment, from which the trust results, was a part of the original transaction, at the time of the conveyance; and that it cannot arise from subsequent payments. It is further holden that the facts creating the trust must be clearly and fully established; to prove or to repel which, parol testimony is admissible.

It is contended that, as in the deed from *Munroe* to *Downes*, it is recited that the consideration was paid by the latter, parol evidence is not to be received in contradiction to the deed, unless in case of fraud, to prove that it was paid by *Brewer*. Upon this point, the case of *Botsford* v. *Burr*, 2 *John. Chan.* 405, is cited. The plaintiff there relied upon the assignment of a note to the defendant, in addition to other testimony, to establish a resulting trust. It was holden that it could not have that effect, it being subsequent to the original transaction. The Chancellor further states that the formal assignment of that note to the defendant by an instrument under seal, could not be contradicted by parol. But in the case of *Boyd* v. *McLean*, Chancellor *Kent* went into an elaborate consideration of the point raised, whether such a resulting trust be within the statute of frauds, and whether the fact, on which the trust arises, may be shown by parol proof in opposition to the language of the deed, and even in opposition to the defendant's answer. And although he admits that such evidence may be dangerous in its consequences, he felt himself constrained to come to the conclusion that such proof was admissible in courts of equity. The Chancellor examines the cases with his usual ability, and without going over the same ground, which we cannot regard as necessary, we find ourselves compelled by the weight of authority to adopt the same opinion, however distrustful of its policy. In this case however, in the transactions between *Brewer* and *Downes*, there was an attempt to put the property out of the reach of the creditors of the former, in a manner which is deemed fraudulent in law. And of this, the defendant, taking an assignment of the fictitious mortgage, without consideration, could not be ignorant.

In regard to the circumstances attending the conveyance from *Munroe*, there is no conflict of testimony. *Brewer* made the bargain with him, gave his notes for the purchase money, with *Downes* as his surety, and by his request the deed was made to

*Downes*, who held the land only as security for what he might have to pay, and for what he might advance. Had *Downes* lent the money to *Brewer* to pay *Munroe*, and taken the deed in his own name for security, it would have been a payment of the purchase money by *Brewer*, to whom a trust would have resulted. So it was decided in *Boyd* v. *McLean*, upon such a state of facts. In this case *Downes* did not in the first instance lend the money, but lent his name to *Brewer* as surety. Shall he be held a trustee if he lends money, and shall he hold the land free of the trust, if he only lends his credit? There is no ground in reason or justice for such a distinction. He always regarded *Brewer* as the purchaser, and the real debtor of *Munroe ;* and that the land was conveyed to him to secure any sum he might have to pay as *Brewer's* surety. The defendant, at the request of *Brewer*, paid to *Downes* the money he paid to *Munroe*. At the time of the original transaction with *Munroe*, *Brewer* was the purchaser, his note was accepted with such surety, as he had it in his power to offer. This was virtually payment at the time. If upon this security the deed had been made to *Brewer*, and he failing to pay, *Downes* had been called upon and paid, could it be said that a trust resulted to *Downes*, from the payment of the consideration? If so, every man, who signs as surety for another, for the consideration, in the purchase of real estate, will be secured by a resulting trust, if he has to pay the money. And yet this cannot be pretended. The question who is the purchaser, does not depend upon who is ultimately compelled to make actual payment. If the surety pays, he will be entitled to be reimbursed, upon the implied assumpsit of the principal ; but he has no lien, trust or interest in the land, unless it has been conveyed to him, and then he will hold it only, as in *Boyd* v. *McLean*, by way of pledge.

If the consideration was paid or secured to *Munroe* by *Brewer*, a trust resulted to *Brewer*, while the land was in the hands of *Downes*, charged with his claim for indemnity. Had the defendant notice of the trust? He denies that he himself was to hold the property in trust for *Brewer*, or that there was any agreement or understanding between them to this effect, but he was apprized and does not deny, that *Downes* was ready, upon being indemni-

fied, to convey at the request of *Brewer.* He did so. The defendant received the conveyance by *Brewer's* procurement and direction. He denies any knowledge of the plaintiff's title; but does not deny that *Brewer* had an interest in the property, after paying the amount of *Downes'* claim. He knew that was less than seven hundred dollars, and that the property was worth more than fifteen hundred dollars. Indeed he admits that he was induced to take the conveyance, to avail himself of the excess of value, over what he would have to pay to *Downes,* to indemnify himself from loss incurred, or apprehended, from *Brewer's* firm. With regard to the legal title, he was truly informed that it was absolutely in *Downes;* but from the bill and answer, aside from the proof, it is not going too far to hold that he had notice that *Brewer* had a valuable trust interest in the land, which had been conveyed to *Downes.*

If we look at the proof, the existence and notice of the trust is very clearly established. An objection is made to the testimony of *Brewer* as an interested witness. If the plaintiff prevails, the excess in value, beyond the amount paid by the defendant, will go in discharge of *Brewer's* debts. And if the defendant prevails, the same consequence will follow; as it is then to be applied, as the defendant admits, to the payment of his claims against *Brewer.* The witness has other inducements to sustain the title of the defendant. He is his relative. He has been permitted to enjoy the property without payment of rent; and he may expect further accommodation. The objection to the witness is overruled. *Downes,* in his deposition, declares that he held in trust. That he was dissatisfied with his situation, and requested *Brewer* to get some one to take his place, who thereupon brought in the defendant, to whom he conveyed at *Brewer's* request, but that he did not tell the defendant that he held the land exclusively for *Brewer's* benefit. How far *Downes* had an interest, the defendant was apprized by the amount of his claim, and the residue he could not but see, he held subject to the direction of *Brewer.* The mortgage, *Brewer* to *Downes,* was assigned to the defendant also at the request of *Brewer,* without consideration, and this was a circumstance strongly indicating that *Downes* held in trust for him.

*Brewer* deposes, that *Downes* held the land for his benefit, that he told the defendant the situation of the property, and desired him to take it to assist him, informing him that *Downes* did not wish to have any thing to do with the land, and desiring him to take his place. He adds on cross-examination, that the defendant never agreed or promised to convey the land to him on payment of any sum whatever, and that he did not request him to take the property in trust for him, or any other person. The point we are now examining is, whether *Downes* held in trust for *Brewer*, and whether the defendant had notice of it. Taking the bill, answer and proof together, both these facts are made out beyond a reasonable doubt.

The defendant calls for proof of the consideration, for which the estate in controversy was conveyed to the plaintiff; and it is furnished by the deposition of *Brewer*, and the papers thereto annexed. It is objected that when the indenture was made, under which the plaintiff holds, *Brewer* had nothing to convey, the seizin being then in *Artemas Ward;* to this it is a sufficient answer, that *Brewer* was the assignee of the mortgagor, and was in possession, and that the right to redeem, either the equity sold on execution, or the legal estate, had not expired. In respect to the prior mortgage to *Downes,* it was so clearly fraudulent as to creditors, of which the defendant, who paid no consideration for it, must be holden to have had notice, that it does not stand in the way of the plaintiff's title.

The defendant being chargeable with notice of the trust to *Brewer,* it was his duty to inquire, whether *Brewer* had conveyed it to a third person. He says, in his answer, that he did inquire of *Brewer,* who denied that he had made any such conveyance. To this he thought proper to confide. If he had examined the records, he would have found the deed to the plaintiff recorded more than a year before. If he did not take proper precaution and was deceived, he must abide the consequences.

But independent of this direct and obvious means of notice of the plaintiff's title, and regarding him as unaffected with it at the time, he has suffered nothing from the want of it. He took the land, charged with the same trust under which *Downes* held it, of which he had notice. As to any interest of his own, beyond the

amount secured to *Downes*, although set up in the answer, it is disproved by the entire silence of *Brewer* upon that point, by his continued possession, without payment of rent, and by the manner in which the defendant kept his accounts with him. The trust then with which the land was chargeable in favor of *Brewer*, would enure to the plaintiff in virtue of the indenture, whether the defendant had notice of it or not.

Upon these facts equity requires, that there should be refunded to the defendant all he has paid, with interest upon it, including the amount charged to the *Brewer* house, which being paid, it is ordered and decreed, that the defendant release to the plaintiff his interest in the land, subject to the trusts in the indenture of *July* twenty-first, 1829. But under all the circumstances, we do not award costs.