## Pierce *vs* Pierce.

CHANCERY.

Case 113.

ERROR TO THE FLEMING CIRCUIT.

*Femes covert.   Trusts resulting.   Settlements.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court—Judge BRECK dissenting.

July 17.

Case stated.

THOMAS NEWCOMB executed his bond to Jesse Pierce for the conveyance of 74 acres and 100 poles of land, at the price of $20 per acre, making $1,492 50, payable as follows: "one thousand dollars of the amount I present to my daughter, Jane Pierce," who was the wife of the obligee, the residue was made payable in three annual instalments, a deed to be made on the receipt of the last payment, and at the same time Pierce to give a receipt for the amount of $1,000, given to his wife. Before the payment of the last instalment of the purchase, T. Newcomb died, leaving the title of this land to descend to several heirs, of whom Mrs. Jane Pierce was one. A portion of the land, (40 acres,) was sold under a decree, for the unpaid part of the purchase money, and purchased by S. C. Pierce for less than $300; and the whole having been previously mortgaged by Jesse Pierce to the said S. C. Pierce, to secure a debt of near $600, a bill was filed for foreclosure and sale of so much of the land as had not been sold under the vendor's lien. In this bill the heirs of T. Newcomb being necessary parties, Mrs. Jane Pierce, by way of answer and cross bill, claims under the gift to her as contained on the face of the title bond, an interest in the land bearing the same proportion to the whole as $1,000 bears to the whole price—alledging that her husband has left her without means of support, and with several small children to maintain. This claim is resisted by the mortgagee on the ground that the sale of the land to Jesse Pierce, was without condition, &c. The Court decreed the remaining 34 acres and 100 poles to be conveyed to the use of Mrs. Jane Pierce for

A father-in-law gave a bond to his son-in-law for the conveyance of a tract of land estimated to be worth $1,492 50, one thousand dollars of which was donated to the wife of the obligee, and $492 50 to be paid by the son-in-law; the $1,000 was receipted for expressly as a donation to the daughter, the father-in-law died, title to the land descended to the wife of the obligee and others, heirs of obligor, the daughter against the creditors of her husband, insisted on her right to a settrement out of the land to the extent of $1000, that part of the consideration donated to her by her father, as the father had treated that donation as advancement to her, and on that account given her less than his other children. Held that she had a right to the settlement at the hands of the Chancellor as against the creditors of the husband to that extent.

life, and her children afterwards, and a reversal of this decree is sought by the writ of error.

There seems to be no room for doubt, that T. Newcomb intended the sale and conveyance of the land to Jesse Pierce, to be an advancement to his daughter, Mrs. Pierce, to the extent of $1,000 of the price. She alledges in her cross bill, and it is rendered probable by the recital of the will, that in consequence of this advancement, nothing was given to her by will. Her whole patrimony then, and her only means beyond the labor of her hands, for the support of a helpless family, consists entirely in such interest as she may have, if any, in this land, or in the price, or in the bond for the conveyance of the title.

If her necessities could give title to the relief prayed for, there could be no denial of her claim. But strongly as these may appeal to the sympathies of the Chancellor, they furnish no ground for his action in her behalf, unless upon some interest of hers, which may be claimed by or through the husband. In this view it might be a question whether to the extent that the title has descended to her, she should be compelled to convey. If, however, her husband had in fact been a purchaser, by his own means, to the full extent of the contract price of the land, and had received a bond for title in the common form, making no reference to the wife, she would certainly have had no equity in, and none against the bond, and none prior to it which could affect either the legal title in the hands of her father, or the equitable title in the hands of her husband. And we doubt if the Chancellor should lay hold of the mere circumstance of the naked legal title having descended to her before the complete execution of the contract, to compel a provision. In the case supposed, her father could not have insisted upon a reservation in her favor, nor would the Chancellor have coerced it if a specific execution of the contract had been sought in his lifetime. And the title being subject to the same equity in the hands of his heirs, as in his, we do not perceive that the wife, though one of the heirs, would have any more equity to have a settlement, or to retain this title, than if it had been held by a stranger. The title is

absolutely subject to the equities created and evidenced by the bond. And unless the wife has an equity in or under the bond itself, she has no equity to retain the title, even so far as it is in her by descent. We come then to the question whether, on the face of this bond, the wife has any equity; and as this question, under the view we have taken of it, is not affected by the fact that her father, the obligor, is dead, and a portion of the title is in her by descent from him, we shall consider it as if he were still living and the effort was to coerce the title from him to the husband or his assignees.

Would the wife, in such a case, be a necessary party? Would the Chancellor, upon her petition disclosing her necessities and asserting an interest in the bond, recognize and secure such interest? Or might her father resist a specific execution, unless in a mode which would secure to her the benefit of the $1,000, part of the consideration given to her, and therefore, paid by her as a part of the price of the land? To the extent of this portion of the consideration, does not the husband or his assignee claim through the wife, and is not their claim, therefore, subject to her equity to have a settlement, or to have that portion of the land for which she has paid, or to have her $1,000 raised out of the land?

Suppose instead of presenting $1,000, part of the price to the vendor's daughter, he had presented the same sum, in the same terms, to a grand daughter, the child of Mrs. Pierce, and provided that upon payment of the residue by Pierce, a deed should be made, he receipting for the $1,000 given to his child; what should have been the form and effect of the receipt to be given on completing the payment and making the deed? Should it not have stated the fact that Pierce had received for his child, as a gift from her grand-father, $1,000 in the price of the land? Would it not, if it conformed to the real intent and nature of the transaction, be in effect a transfer of so much of the price of the land to the grand daughter, and would not this give a lien which, although subject, if not reserved in the deed, to be defeated by a subsequent sale to a *bona fide* purchaser without notice, would be valid against the original grantee? And would it not be

Would not a father who gives his bond to convey to his son-in-law a tract of land in consideration of a donation of part of the price to his daughter, have a right to resist a specific execution unless the rights of the daughter to the extent of such part was secured to her, or if such a donation had been made to the grand daughter of the obligor? Held that he properly might resist for such purpose.

proper, and in case of the insolvency of the father, would it not be incumbent on the grand father to secure the benefit of his gift to the intended donee, by reserving this lien, or otherwise protecting the interest of his grand daughter in the deed itself? We think the obligor might, in such a case, resist the execution of the contract, and that the Chancellor, upon his suggestion or on the prayer of the donee, would not enforce it, except upon such terms and in such mode as would secure the real object of the donation as evidenced by the contract itself. And so if the obligor in this case had been the uncle or a stranger, instead of the father of Mrs. Pierce, and the gift to her had been made in the bond just as it is, with the requisition of a receipt from her husband, we should not doubt that the obligor might, and the Chancellor would, under circumstances indicating the necessity of so doing, or even upon suggestion of danger, provide for the interest of the wife by securing to her the benefit of the intended donation.

If a conveyance be made of land to A., and B. prove that he paid a part of the price for his own use, with the intent to secure an interest in the land, a trust results in favor of B., though not named in the deed. If the deed recite the payment by B. then A. would hold in trust for B.

Again, if a conveyance of land is made to A, and B proves that he paid a part of the purchase money for his own use, and with intent to have an interest in the land, a trust results in his favor upon the title itself, though he is not named in the deed, and he may have a portion of the land. And if the deed to A, mentions that a certain part of the price was paid by B, there could be no doubt that A would be held as a trustee, and that B would be entitled either to a portion of the land or to the money, with a lien on the land for its security. The only question in such a case, would be whether the fact was stated for the purpose of evidencing an interest in the use of the land, or as evidencing a lien only.

In the case before us, the only difficulty arises from the supposition that the gift, though declared to be to the daughter, is really intended as a gift to the husband, or must, from the relation between them, have that operation, and from the assumption that the only benefit intended to the wife, was in the conveyance of the land to the husband, as provided for, wherein it is inferred that as there is no stipulation for a trust or reservation in her favor in the conveyance, she can be entitled to none.

But suppose the deed had been made, reciting the consideration of $1,500, of which $500 were paid by Pierce and $1,000 by his wife, furnished by her father, the grantor, for that purpose, or receipted for as being a gift to her, and conveying the land to Pierce in fee simple, would it not be clearly inferred that this recital was intended to create and prove an interest in the wife, either in the land or the money? And would this inference be weakened by a receipt from the husband, showing that he had received that sum of money given by the father to the daughter, in the price of the land, or merely for so much money given by the father to his wife?

But this executory contract is entitled to a construction at least as liberal as a deed, for ascertaining and giving effect to the intention of the parties. If the father had merely intended in behalf of his daughter, such benefit as she might derive from a conveyance of the land to her husband, it would have been unnecessary, as it is unusual to make the specific reference to the gift to her as a part of the consideration. The fact of specifying the gift to her in the price of the land, proves that a specific benefit was intended for her, and the requisition of the receipt from the husband when the deed should be made, was intended as a bar to that extent, of any future claim by him or his wife in her right, and might have been made for the additional purpose of expressing in it more distinctly, and of securing the intended benefit to the wife. Considered only in the first aspect as a voucher to control the disposition of the father's estate after his death, and to bar his daughter from any claim upon it to the extent of $1,000, it strengthens instead of weakening the inference arising from the recited gift to her, that a substantial and specific benefit was intended to be secured to her by the gift. Even in this aspect, and more especially if the receipt was referred to as a means of specifying and securing the intended benefit, the father would have had a right, in consummating the contract, to have secured the interest of his daughter, by expressing a trust, or reserving a lien in her favor. And the Chancellor would have the same right in enforcing specific execution after his death. But the reference to the receipt to be given

when the deed is made, tends to show that the intended gift to the daughter was only then to be consummated, that there was in fact only an agreement to give $1,000 in the price of the land to her, and to consider it as given in conveying the land. If this were not so, why was not a receipt at once taken, showing the advancement? And if this be so, is not the thousand dollars still unadvanced, and are the creditors of the insolvent husband entitled to wrest it from the wife, to whom it was intended to be given?

In any view of the case, we are of opinion that there is in the bond itself such evidence of an interest and equity in behalf of Mrs. Pierce as requires protection by a Court of equity, and such as being apparent in the bond must overreach all equities created by the husband. We are further of opinion, that as the husband was bound to pay the residue of the price of the land, after deducting the $1,000 paid or to be paid in the gift to the wife, he and not she should bear the loss consequent upon a sale of part for the purchase money which he should have paid, except that her interest in that part is concluded, and must be lost so far as it cannot be satisfied out of the residue. If the entire tract had remained unsold, she would be entitled either to the use of two thirds of the land, or to have her $1,000 made out of it. More than half of the land having been sold under the vendor's lien, she is entitled either to the use of the residue, or to have her money made by its sale. And as it sufficiently appears that it is wholly insufficient to raise that sum, there is no impropriety in having secured the land itself to her and her children. There is the less hardship to the assignee or mortgagee of her husband in this conclusion, inasmuch as he has purchased a larger portion for less than one third of the sum that Mrs. Pierce must give for this. And as there is no intimation that he would prefer a sale of the 34 acres and 100 poles, for the purpose of raising the sum of $1,000, such an experiment need not have been made.

Whereupon, (Judge Breck dissenting from the foregoing views and conclusions,) the decree is affirmed.

*Cavan and Cox* for plaintiff; *Cord* for defendants.