# WHEELING.

## MURRY *v.* SELL *et al.*

Submitted January 28, 1884—Decided March 15, 1884.

A. enters into an executory contract for the purchase of land and afterwards but before the title is conveyed to him or any part of the purchase-money is paid, he agrees with B., a stranger, that if he will pay one half the purchase-money he shall be an equal

owner in the land ; B. consents and thereupon he and A. pay
the whole purchase-money to the vendor, each paying one half
thereof; the legal title is subsequently conveyed by the vendor
to A. HELD :

I. Such payment by B. created a resulting trust in his favor and
the conveyance of the legal title thereafter to A. made him
trustee for B. as to one half the land.

II. Trusts of this character are exempted from the statute of
frauds and it is competent for the real owner to prove his
payment of the purchase-money by parol evidence even
though it be otherwise expressed in the deed. (p. 479.)

The statement of the case appears in the opinion of the
Court.

*W. G. Brown & Son* and *Hoke & Worley* for appellants.

*John Brown* and *John Barton Payne* for appellee.

SNYDER, JUDGE :

This suit was orignially brought in the county court of
Preston county in May, 1875, by Michael Murray against
Levi H. Sell and James Ward and subsequently moved to the
circuit court of said county. The plaintiff in his original
and amended bills alleges, that two hundred and five acres
of land lying in said county was in 1858, advertised for sale
by a commissioner under and by virtue of a decree of said
circuit court; that before the sale he and the defendant
Ward agreed that they would jointly buy the land and that
Ward should do the bidding for it; that on the day of sale
he was absent but Ward was present and bid off the land at
six hundred and forty-six dollars and they shortly after paid
the purchase-money to the commissioner each paying one
half thereof; that Ward was to take and hold the title for
them jointly until they could re-sell the land and then the
proceeds were to be equally divided between them ; that the
legal title was conveyed to Ward by the commissioner in
February, 1862, and he took possession of and resided on
the land until 1864, when he sold it to one Hull who paid
to Ward in cash one hundred and fifty dollars and gave his
five bonds to Ward for the residue of the price; that Ward
divided said notes by delivering two of them to plaintiff

and retaining two for himself and the fifth was to be collected and the proceeds thereof eqully divided; that Hull failed to pay said notes and a suit was brought to subject the land to their payment; that the land was sold under a decree in said suit and Ward again became the purchaser at a price less than the amount of purchase due thereon from Hull to plaintiff and Ward, with the agreement that Ward would still hold the land for their joint benefit; that a second sale was subsequently made by Ward to the defendant Sell at the price of one thousand dollars, of which sum Sell paid to Ward cash five hundred dollars and for the residue executed to him his notes; that Ward retained said five hundred dollars and is proceeding to collect said notes and refuses to account to plaintiff either for the money paid by him on the original purchase of the land or for any part of the proceeds of the sale, or for the rents and profits of the land while he was in the possession of it. The prayer of the bill is that the defendant Ward be restrained from collecting the residue of said purchase-money from Sell; that he be required to account to the plaintiff for one half of the proceeds of said land and for the profits arising therefrom, and for general relief.

The defendant Ward in his answer denies that the plaintiff ever had any interest in said land or that any agreement had been made before the sale for the purchase of the land on their joint account, but he admits that after the first purchase by him he agreed verbally that, if the plaintiff would pay one half the purchase-money he should have an equal interest in the land and that plaintiff did pay to the commissioner one half the purchase-money. But Ward claims in his answer that as his said agreement with the plaintiff was merely verbal and made after the sale to him, the same was invalid by reason of the statute of frauds and no interest in the land passed thereby to the plaintiff, and that the payment made by the plaintiff operated simply as a loan and having been made more than five years before the institution of this suit the right to recover the same is barred by the statute of limitations which he pleads and on which and on the statute of frauds he relies. Ward avers that the plaintiff was also to pay one half the taxes and the expenses of improving the land which he wholly failed to do. He further avers that

shortly after his purchase in 1858, he moved upon the land and then and since incurred expenses, in improving, paying taxes on and caring for it, amounting to one thousand and ninety-six dollars and thirty-eight cents (as per itemized account filed) all of which is due to him and not one cent thereof has been paid by the plaintiff; and that upon a fair settlement of all their transactions the plaintiff would be indebted to him.

The cause was referred to a commissioner to report a settlement of accounts between the plaintiff and Ward, and he reported that Ward was indebted to plaintiff as of October 3, 1879, in the sum of five hundred dollars and sixty-eight cents. The defendant, Ward, excepted to said report, after which and before final decree he died and the cause was thereafter revived in the names of his real and personal representatives. On August 21, 1882, the court entered a final decree dismissing the plaintiff's bill without acting on the report of the commissioner or Ward's exception thereto. From this decree the plaintiff was allowed an appeal.

The first question to be considered is, whether or not the plea of the statute of frauds bars the plaintiff's claim to an interest in the land? The proof does not distinctly show that, at the time the land was bid off by Ward in 1858, there was an agreement between the plaintiff and Ward that the latter should make the purchase of the land on their joint account; but it fully establishes that the purchase was on credit and that before the purchase-money was paid or the deed executed such agreement was made and in accordance with it the plaintiff and Ward each paid to the commissioner who sold the land one half of the purchase-money, and that thereafter by the agreement the deed was executed to Ward for their joint use with the understanding that they would re-sell it and divide the proceeds of sale. Ward says, in his deposition: "Before I paid the money to Hardesty (the commissioner) I proposed to the plaintiff, Murray, that if he would pay one half of the purchase-money for the land in controversy and pay one half of all expenses, taxes and improvements, that I would admit him into equal partnership with me in the purchase and ownership of the land. This was a verbal arrangement; there never was any writings between

us. The plaintiff accepted the proposal and paid three hundred and twenty-three dollars, one half of the original purchase-money, not including the twenty-five dollars paid by me to Mrs. Slater as aforesaid." The twenty-five dollars here referred to is not proven to have been paid on the land. The receipt filed as a voucher for it shows that this sum was paid April 25, 1859, "in full of all accounts to date," and from the date, which is long after the purchase, and all the circumstances I have no idea that said item had any connection with the purchase of the land.

Ward also testifies: "The fifty dollars, after deducting the expenses of making deed to Hull, I divided with plaintiff giving him twenty-two dollars and fifty cents. I also gave Murry two of Hull's notes and retained three myself. Hull sold the land in about two months to a man by the name of Arnold. * * * I collected the first note given by Hull from Arnold and eighty dollars on the second which had been given to Murry." He further testifies that he had suit brought to sell the land for the residue of the money and that on the day of sale he again purchased it "for what purchase-money was against it and the costs of suit and expenses of sale," and that he paid the costs amounting to seventy dollars and forty cents; that he afterwards sold the land to the defendant Sell for nine hundred dollars. "Said Sell paid me in hand one hundred dollars and when I made him the deed in June, 1874, he paid me four hundred dollars more and gave his three notes for one hundred and thirty-three dollars and thirty-three cents each, and in June, 1875, Sell paid me the first one of the one hundred and thirty-three dollars and thirty-three cent notes. The notes were all without interest till maturity. The other two notes I yet hold unpaid."

It seems to me this testimony of the defendant Ward of itself and without reference to that of the plaintiff and the other witnesses which fully sustain the allegations of the plaintiff's bill, fully establishes a resulting trust in favor of the plaintiff for one half the land. Conceding there had been no agreement to purchase on joint account at the time the land was bid off by Ward, still as such agreement was confessedly made before any part of the purchase-money had

been paid or the conveyance executed, and the plaintiff in accordance with it paid one half of the purchase to the vendor, the agreement was made before the purchase was completed and thus according to equity entitled the plaintiff to one half the land. Until the purchase-money is paid and the conveyance executed the contract is merely executory and the vendor in law is still the owner of the land. It is essential that the agreement should be made at or before the conveyance and that the money should be paid by the alleged *cestui que trust* to the vendor in pursuance of such agreement; for a resulting trust cannot be raised by matter *ex post facto* —*Steere* v. *Steere*, 5 Johns. Ch. 1; *Botsford* v. *Barr*, 2 *Id.* 405; *Pierce* v. *Pierce*, 7 B. Mon. 433; *Hamilton* v. *Steele*, 22 W. Va. 348.

The plaintiff having paid one half the purchase-money before the completion of the purchase upon an express agreement that he was to have an equal interest in the land, the subsequent conveyance of the legal title to Ward did not divest him of that interest. Ward as to such interest held the title as trustee for the plaintiff and in equity a trust resulted in his favor to a part of the land equal to the proportion of the purchase-money paid by him—*Shoemaker* v. *Smith*, 11 Humph. 81; *Boker* v. *Vining*, 30 Me. 121; *Buck* v. *Pike*, 11 Me. 9; *Bank* v. *Carrington*, 7 Leigh 566; 13 W. Va. 64.

Trusts of this character are exempted from the statute of frauds and it is competent for the real purchaser to prove his payment by parol evidence even though it be otherwise expressed in the deed—*Bank* v. *Carrington, supra; Botsford* v. *Barr*, 2 Johns. Ch. 405; *Sprindle* v. *Hayworth*, 26 Gratt. 392; *Troll* v. *Carter*, 15 W. Va. 567, 579.

I am, therefore, of opinion from the evidence, which the subsequent conduct of the parties strongly supports, that the original purchase of the land was intended to be and was in fact a joint purchase by the plaintiff and Ward and that the subsequent conveyance of the legal title to Ward did not deprive the plaintiff of his interest in the land, but that thereafter Ward held one half of it as trustee for the plaintiff.

The rule that, when the relation of trustee and *cestui que trust* is once established, no subsequent dealing with the trust-property by the trustee can relieve it of the trust as between

him and his *cestui que trust* is too well established to require argument— *Vangilder* v. *Hoffman*, 22 W. Va. 1; *Lawrence* v. *Du Bois* 16 *Id.* 443. Therefore, the subsequent sale of the land for the purchase-money due from Hull and the re-purchase by Ward at such sale did not divest or affect the equitable title of the plaintiff to one half the land. Upon said re-purchase Ward held the legal title as trustee for one half the land just as he did under the first purchase. The purchase money, with which the re-purchase was made, was the balance due on the land from Hull and this was the joint fund of the plaintiff and Ward. Under no rule of law or equity could such a transaction convert a trustee into an absolute owner—2 Rob. (old) Pr. 74. If Ward paid any costs or other legitimate expenses in re-vesting the title in him after the sale to Hall or in improving and caring for the land, he ought in justice to be reimbursed therefor out of the proceeds of the property or by the plaintiff, but he could not thereby convert his title into an absolute one and divest the interest of the plaintiff in the land. For such costs and expenses he would stand simply as a creditor of the plaintiff to the extent of one half the amount so paid after deducting whatever had been repaid him, if anything, by the plaintiff on that account, and after also crediting the same for the use and occupation of the land while it was in his exclusive control and possession. Ward should also account to the plaintiff not only for one half of the proceeds of the sale to the defendant Levi H. Sell, but also for one half of the sums realized on the sale to Hull and for what was paid to him by Arnold, subject however to such credits as he may show himself justly entitled to of the character above indicated and also for any taxes actually paid by him out of his own funds.

As the court below did not pass on the report of the commissioner or the exceptions thereto, I do not deem it my duty to do so here as the parties may desire to take further testimony in regard thereto. The report does not seem to me to be at all prejudicial to the defendants but rather favorable; still I think it best to remit the whole matter to the circuit court for its action before any action should be had on either the report or exceptions by this Court.

For the reasons herein stated I am of opinion that the decree of the circuit court of August 21, 1882, should be reversed with costs to the appellant against Phœbe A. Ward, executrix of James Ward, deceased, *de bonis testatoris*; and that this cause be remanded to the said circuit court with leave to any party to take further exceptions to the report of Commissioner Monroe and, if it seems proper to said court, it may recommit said report to the same or some other commissioner; and for further proceedings to be had in said court according to the principles and directions set forth in this opinion and further according to the rules of equity.

REVERSED.  REMANDED.