# CHARLESTON.

SEILER v. MOHN, *et al.*

Submitted September 17, 1892.—Decided December 22, 1892.

1. TRUSTS AND TRUSTEES.

S. enters into an executory contract for the purchase of a tract of land, takes possession of the same, erects buildings, and makes valuable improvements thereon, but before the title is conveyed to him, or any part of the purchase-money is paid, he agrees with R. & M., if they will pay the purchase-money, they may share equally in the property in its improved condition in the proportion of one third each, and in pursuance of said contract said R. & M. do pay the purchase-money, and take the deed therefor to themselves. Under these circumstances, a trust as to one third of said property results in favors of S.

2. TRUSTS AND TRUSTEES—STATUTE OF FRAUDS.

Trusts of this character are exempted from the statute of frauds, and the circumstances creating them may be proved by parol.

3. TRUSTS AND TRUSTEES.

It is not necessary that the party in whose favor the trust is claimed should actually count out and pay down the purchase-money to the vendor. If is sufficient if the money or its equivalent is furnished to the party who pays such purchase-money, and a trust results to the party in whose behalf it is advanced, although the party advancing the money has taken a deed to himself, and, if only a part of the purchase-money is paid by a third person, a trust results *pro tanto.*

DAYTON & DAYTON for appellant, cited 5 W. Va. 71; Id. 107; 22 W. Va. 348; 12 W. Va. 542; 15 W. Va. 567; 23 W. Va. 475; Id. 717.

W. B. MAXWELL for appellees, cited 1 Bar. Ch'y Pr. 266; Sto. Eq. Pl. § 40; 31 W. Va. 736; 33 W. Va. 738, 743; 21 Gratt. 678; Wood. Stat. Fr. §§ 191, 227; 1 Dev. Deeds § 30 & n.; Pom. Cont. § 57; Sto. Eq. Juris. § 973; 8 W. Va. 245; Code, c. 130, s. 23; 33 W. Va. 236; 21 Gratt. 838.

ENGLISH, JUDGE:

On the first Monday in April, 1890, John R. Seiler filed his bill in the Circuit Court of Tucker county against Joseph C. Roudenbush and George C. Mohn, in which he alleged that on the 2d day of April, 1888, one Thomas Snider, by an article of agreement of that date, sold to one Henry Krumrine two certain pieces of land, aggregating, as estimated, seventy five acres, for the consideration in said article expressed, situated in said county, and particularly described in said article of agreement, a copy of which was exhibited and made part of plaintiff's bill;—that the said Henry Krumrine, being advanced in years, and quite feeble in health, and being unable to pay for said land, appointed and duly authorized H. P. Cadwallader as agent to sell said tract of land, so that the purchase-money, which had not then been paid, could be raised, and paid to said Thomas Snider; and thereupon, on the 9th day of April, 1879, by a contract in writing, the said agent of Henry Krumrine sold the said two parcels of land to the plaintiff, as will appear from a copy of said contract, which was exhibited with said bill;—that, in pursuance of the said purchase of the said plaintiff, he took possession of the said tracts of land, erected buildings thereon, and made other valuable improvements, to the value of at least from eight hundred dollars to one thousand dollars, and that he was still in possession thereof and residing thereon with his family; and that the said plaintiff fearing that he would be unable to pay the purchase-money due from him upon the said land on the — day of ———, 1889, made a contract with the said defendants whereby they were to pay all the purchase-money then due and to become due upon said land and in consideration thereof they were to have conveyed to them by the said Snider two thirds undivided interest in said land, while the other third should be conveyed to the plaintiff; that in pursuance of said agreement made between the plaintiff and the defendants, they paid all the purchase-money then due upon said land to the parties entitled thereto, and on the — day of ———, 1890, obtained from the said Thomas Snider a deed of conveyance for the whole of said land by representing to him that they were

entitled to have the deed so made, as will appear from a certified copy of the recordation thereof which is exhibited with said bill.

Plaintiff charges that the said defendants, by the said contract made between them and the plaintiff, hold in trust for the plaintiff an undivided one third interest in said land free from all incumbrance of purchase-money or otherwise, which they should convey to him upon demand, but have failed, neglected, and refused so to do. The plaintiff therefore prays that the said defendants may be compelled to convey the said undivided one third interest to the plaintiff, free from incumbrance, and for general relief.

At the May rules, 1890, John C. Mohn demurred to plaintiff's bill, and also filed his answer, in which he says the said Joseph C. Roudenbush died in the State of Pennsylvania on the 13th day of April, 1890, leaving a widow, whose name is Hattie Roudenbush, and an infant child of the age of only a few months, named May, as his sole heirs surviving him, so far as he knows.

He denies the right of the plaintiff to recover in said action, and generally denies the right of plaintiff to have any recovery; but that, as the plaintiff must have all necessary parties before the court before having his case heard, he reserved the right to file a further answer containing his specific denials of the several allegations of said bill (which he does not admit to be true) as soon as the necessary parties are before the court. He avers that the said bill is not sufficient in law, and will by counsel assign his reasons for this averment upon the hearing thereof.

On the 16th day of June, 1890, the death of Joseph C. Roudenbush having been suggested, steps were taken to revive the cause against said widow, and a guardian *ad litem* was appointed, who filed an answer for the infant.

After the parties were properly brought before the court, George C. Mohn filed an answer, first demurring to plaintiff's bills as insufficient in law, and for cause of demurrer states the same are insufficient—*first*, because the contract sought to be set up by plaintiff against the defendants, not having been in writing, is void under the statute of frauds; *second*, because the contract, a copy of which is filed with

plaintiff's bill as Exhibit B, and under which the plaintiff claims to have obtained possession of the land in controversy, is not a contract for the sale of said land, and did not entitle the plaintiff to the possession thereof, and did not authorize him to go on making improvements, but the same was only an option, dated April 9, 1889, and expired five months after the date thereof, without the plaintiff having paid the first or any other payment thereunder, and without having the same extended.

And, answering, said defendant admits that about the 2d day of April, 1888, Henry Krumrine contracted to purchase the land in controversy of Thomas Snider, and that said Snider made the deed for said land to the late Joseph C. Roudenbush and respondent jointly. He avers that the facts and circumstances connected with said purchase were as follows:

Some time about the first of January, 1890, respondent and said Roudenbush, who were residents of Pennsylvania, came down into West Virginia to look up a situation to engage in some manufacturing enterprises they then had in contemplation, and chancing to run across the land in controversy, which seemed to suit their purposes, set about to buy the same. They very soon found that the same belonged to the estate of Henry Krumrine, who was then dead. They then returned to Pennsylvania, and entered into negotiations with the executor of Krumrine, to purchase the same, and on or about the 6th of January, 1890, did purchase the said land of said executor upon the terms that they were to pay and did pay five hundred dollars, and were to pay and have paid Thomas Snider the full amount of purchase-money then due him from said Krumrine, and they were to receive their deed for said land from said Thomas Snider, and have received such deed, and also took a deed for said land from the executor of said Krumrine. Said Seiler was found in possession of said land, and respondent and said Roudenbush were informed that he was a tenant of said Krumrine. Respondent and said Krumrine were informed that all the buildings and permanent improvements on said land were put there by said Krumrine long before said Seiler took possession, as he now

claims under said option; and respondent was informed that said plaintiff's allegations that he took possession under said option, and thereafter made from eight hundred dollars to one thousand dollars worth of improvements thereon, are utterly false and untrue; and that the plaintiff's averments and allegations that said Roudenbush and respondent ever made any contract with him whereby he was to have one third interest in said land, or any other interest in the fee thereto, or ever even contemplated doing so, are absolutely false and not true, and are known by the plaintiff to be false and not true. He denies that they ever contracted with plaintiff to let him have a one third interest, or any other interest, in the fee of said land. At the time they purchased said land he admits they found said Seiler in possession, at which time he says said Seiler told them a pitiful story as to the money he had expended on said land in the way of improvements, *etc.*, and begged to be permitted to remain thereon for a short time, until he could get some other place to go. Thereupon they told him to remain upon the land until they were ready to begin their operations and take care of the land, and that he could have all he made on the land, but that he was to get out of their way at their pleasure; all of which intended kindness the said plaintiff now attempts to construe into a gift on the part of the said Roudenbush and respondent of a one third interest in said land. Said Seiler had nothing to do with the purchase of said land or any interest therein for them. All he did was to show them the land, and inform them as to the real ownership of the same. The respondent denies every material allegation not therein admitted, and says the plaintiff's whole claim is a pretence and a fraud, and he well knows it to be so.

Depositions were taken by both plaintiff and defendants, and on the first day of December, 1891, a decree was rendered in the cause dismissing the plaintiff's bills, with costs, and from this decree the plaintiff applied for and obtained this appeal.

In considering the questions involved in this case, it may be well to call attention first to the position occupied by the plaintiff, John R. Seiler, with reference to the title to

the land in controversy at the time of the alleged interview between him and the said Roudenbush and Mohn, when the plaintiff claims the contract was made between him and them as set forth in his bill.

On the 2d day of April, 1888, Thomas Snyder, who was the original owner of the seventy five acres of land in controversy, had by written contract of that date contracted to sell said land to Henry Krumrine by an agreement in writing for the consideration of four thousand five hundred dollars, one hundred dollars of which was paid at the time of the execution thereof; and said agreement was admitted to record in said county on the 28th day of May, 1888, and the said Henry Krumrine, being sick, and unable to attend to business, had constituted H. P. Cadwallader his attorney in fact to sell and dispose of his interest in said tract of land; and by a contract in writing between said attorney in fact and said John R. Seiler (the plaintiff) dated on the 9th day of April, 1889, all of the right, title, and interest of said Henry Krumrine in and to said tract of land was contracted to be assigned, set over, and transferred to said John R. Seiler upon the payment of the sum of five hundred dollars; and it was further agreed that the said John Seiler was to have five months from the date of said agreement to pay said consideration. In pursuance of this agreement the plaintiff, Seiler, took possession of said tract of land, and put improvements thereon in the shape of a house and barn of the value of eight hundred dollars or one thousand dollars; and the proof shows, and the answer of the defendant George C. Mohn (the surviving partner) admits, that said Seiler was found in possession of said land. It appears in evidence that Henry Krumrine died on the 22d day of May, 1889, and the witness Cadwallader says he died four of five months after he executed the power of attorney. The contract made by said Cadwallader as attorney in fact with the plaintiff, Seiler, was made on the 9th day of April, 1889, so that said Henry Krumrine was in life at the time said contract was executed.

It is claimed by counsel for the defence that said contract was merely an option, and by the failure to pay the money within five months after the date of said contract all

rights thereunder were forfeited. I can not, however, consider said agreement an option. It was merely an agreement for the transfer of all the right, title, and interest of the said Henry Krumrine in and to said tract of land, and allowed him a credit of five months in which to make the payment of five hundred dollars therefor.

Under this contract the plaintiff, John R. Seiler, acquired rights with reference to said land which neither Thomas Snider nor Henry Krumrine could ignore. Said agreement between said Cadwallader as attorney in fact and the plaintiff, John R. Seiler, was admitted to record in the clerk's office of the County Court of Tucker county on the 19th day of January, 1890, after the following endorsement had been made thereon, to wit: "Now, January 9th, 1890, this agreement concluded, and the premises herein referred to sold to Roudenbush & Mohn, by Sydenham Krumrine, executor of the last will and testament of Henry Krumrine"—which endorsement was signed "H. P. Cadwallader."

How this contract came into the hands of Roudenbush & Mohn does not appear, neither is it easy to determine what right said Cadwallader had to make such an indorsement thereon long after the death of said Henry Krumrine, and the indorsement does not even appear to have been signed by said Cadwallader as attorney in fact.

Now, let us examine the facts disclosed by the record in reference to the dealings between the plaintiff, John R. Seiler, and said Roudenbush & Mohn in reference to this tract of land.

G. T. Schoonover, the hotel keeper at the town of Parsons, says: "After supper Mr. Mohn and Roudenbush inquired of me if Mr. John R. Seiler lived in or about the town of Parsons. I told them that he did, and sent the colored boy for him. He came in that evening. They wanted to purchase some timber lands, and were inquiring of him about such lands. * * * I met them at the depot the day they left town. I remarked to them I hoped that they were not leaving without having made a purchase, to which they replied that they had purchased some timber of Mr. Lloyd Parsons, and a two thirds interest in the

land owned or claimed by Mr. Seiler; that Mr. Seiler was getting old, and had been unfortunate in their country in his business matters; and, after examining the location of his property and slough running down through it, they took it to be a good location for the lumber business, and money to be made in the purchase; and also remarked that they had the money to develop the plant, and that they would invest it there, and help Deacon Seiler and themselves, too. They said they were to pay the purchase-money due on the land to Mr. Snider, and also the costs of the suit then against the land, and that Seiler was to retain one third of the land in consideratian of the buildings and improvements he had made thereon, together with what he had already paid on the land."

The witness L. Hansford in his deposition states that he "was requested by Mr. Seiler about the 2d or 3d day of December, 1889, to go to his place and examine some papers for George C. Mohn and Joseph C. Roudenbush. While at his place, and in the presence of said Mohn and Roudenbush, Mr. Seiler showed him an article. made by him with H. P. Cadwalladar, the attorney in fact for Henry Krumrine, and told him in their presence that he had concluded to sell two thirds of the Snider farm, upon which he then lived or resided, to said Roudenbush & Mohn, whether or not they could get a good title to said land in the condition in which it was. He answered quite a number of questions that they asked him regarding said title, and told them that they could, by paying the purchase-money due to said Snider, and five hundred dollars to Henry Krumrine's estate, get a good title to said land;—that they then stated that they were satisfied with the condition of the title of said land, and further stated that they were to have two thirds of the land, and that said Seiler was to have the other one third; and, upon the paying of the purchase-money due to said Snider and five hundred dollars to the Krumrine estate, their one third each would not then cost them as much as Seiler's one third would cost him or had cost him. And while there they were figuring among themselves as to the cost of their respective shares, and as to when they would begin to put improvements on the land," etc.

It is claimed that the witness Hansford was counsel for Roudenbush & Mohn in this interview, and that what was then said to him should be regarded as a privileged communication, and for that reason excluded; but the evidence shows that he was employed by Seiler to examine and explain the papers to them, and he could not be regarded as their attorney, and statements made by them to him would be competent evidence.

Mr. Cadwalladar in his deposition, speaks of being present at the time the assignment was made of the Henry Krumrine interest in said land to Roudenbush & Mohn, when Mr. Bower, the attorney for Krumrine's executor, remarked, after the papers were drawn and executed, that "we were done now if we had the five hundred dollars." That Mr. Roudenbush objected right there and then to paying the five hundred dollars according to the former agreement, and assigned as a reason for so doing that they might get into some trouble with this man Seiler; and the matter was arranged by giving a check payable in ten days. That while said papers were being drawn up Roudenbush & Mohn told him that they were to pay for the land; that they were to pay five hundred dollars that night to Mr. Krumrine, and to carry out the contract with Snider, and pay the balance of the purchase-money with interest on what was due, that Mr. Seiler was to remain on the property and they expected to start operations there in the lumbering business at some future time.

This evidence renders it apparent that the understanding and agreement between the plaintiff John R. Seiler, and the said Roudenbush & Mohn was that the latter were to advance the money to pay the estate of Henry Krumrine the five hundred dollars, and also to pay to Thomas Snider the residue of the purchase-money due him, and the said Seiler, Roudenbush, and Mohn were to share the said land in equal portions; that is, they were to have one third each.

They, however, after going to Pennsylvania, and obtaining an assignment of the interest of Henry Krumrine, conceived the idea of taking the entire title to themselves, and entirely ignoring the rights and interests of said Seiler in

the premises; and a letter is filed with the depositions of said Cadwallader, dated January 9, 1890, in which said Roudenbush & Mohn say to him: "If you write to Mr. Seiler, please do not tell him that we have closed a contract for the property, as we wish to surprise him when we go. Please say to him that you had met us here, and that you would not come down."

After getting the assignment from the executor of Krumrine, said Roudenbush & Mohn went to West Virginia, and, without seeing Seiler, paid the purchase-money which Krumrine had contracted to pay, and took a deed to themselves for the property, entirely ignoring the rights and interest of John R. Seiler, of which they had full notice.

At the time of the contract between John R. Seiler and Roudenbush & Mohn, he (Seiler) stood in the shoes of Krumrine, and he alone had the right, upon payment of the purchase-money to Snider and Krumrine, to demand a deed for the land. Under his contract he had entered upon the land and made valuable improvements, and he held a valid contract for the purchase thereof, and his agreement was that Roudenbush & Mohn were to have the benefit of his contract and possession and valuable improvments if they advanced the purchase-money for him to Snider and Krumrine.

If Seiler had no interest in the matter, and was in no way concerned, and they were to purchase the land, and have and hold it themselves, why did the said Roudenbush & Mohn on the 9th day of January, 1890, write to said John R. Seiler, saying: "We wrote to Mr. H. P. C. (evidently meaning H. P. Cadwallader) we could not meet him on January 14th, but would meet him at Parsons, January 21st, and asked him to reply, and say whether it would suit him then. Now, Deacon, we have decided to take hold of this thing, and we trust we may find all papers in proper shape when we get there, so our trip may not be fruitless. We further hope that Snider may be ready to make us the deed when the time comes." At that time they were under the impression that said Cadwallader, under his power of attorney, was authorized to make the assignment of Henry Krumrine's interest, although Krumrine was then

dead. But if they had no contract with Seiler, why should they write to him that they had decided to take hold of this thing, and that they trusted they might find all papers in proper shape, and that Snider might be ready to make the deed?

Now, was there any consideration for this contract between Seiler and Roudenbush & Mohn? In determining this we must remember that Seiler then held a valid contract for the entire land, under which he had the right to tender the purchase-money and demand a deed;—that he had erected buildings on the land to the value of eight hundred to one thousand dollars, and made other valuable improvements thereon; and the deposition of the witness Schoonover clearly shows that said Roudenbush & Mohn were fully cognizant of the contribution he was making towards said purchase when they stated to him that "upon their paying the purchase-money due to said Snider, and five hundred dollars to the Krumrine estate, their one third each would not then cost them as much as Seiler's one third would cost him, or had cost him."

After the contract made by Seiler with Cadwallader, attorney in fact for Krumrine, the improvements he placed upon the land became a part of the real estate which Roudenbush & Mohn would acquire by the conveyance from Snider and Krumrine, and Seiler gave them the benefit of his contract and improvements as a contribution towards the purchase, as much so as if he had paid that much money; and this is made more manifest by the supposition that if said Seiler had placed improvements on the land equal to one half of its value, and then had made the kind of contract he did with Roudenbush & Mohn, the latter would by obtaining the deed get the benefit of all that was expended by Seiler in the way of improvements; and, without advancing money, he agreed to give them its equivalent, to enable them to acquire a clear title to said land.

1 Perry, Trusts, § 126, in discussing the subject, after speaking of one or two States (New York and Wisconsin) where the matter is controlled by statute, says: "But with this exception the clear result of all the cases is that a trust of a legal estate, whether freehold, copyhold, or leasehold,

whether taken in the names of the purchasers and others jointly or in the name of others without that of the purchaser, * * * results to the person who advanced the purchase-money, or on whose behalf it is advanced; as, where the money is advanced by way of loan to the purchaser, and the title is taken in the name of the lender as security, a trust results to the purchaser. If only part of the purchase-money is paid by a third person, a trust results *pro tanto.*"

It appears to have been understood and conceded by Roudenbush & Mohn in this case that Seiler had paid as much for his one third interest in said land as either one of them had paid for his third. In Sugden on Vendors (volume 2, p. 435, note *n*) we find it is said:

"It seems to be well established in the United States that parol evidence is admissible to show all the facts out of which a resulting trust arises, not only against the face of the deed itself, but in opposition to the answer of the trustee denying the trust." See *Boyd* v. *McLean,* 1 Johns. Ch'y 582, and *Botsford* v. *Burr,* 2 Johns. Ch'y 405, where this question is thoroughly discussed, and where it is held that, if a part of the consideration is paid by one party, and the deed is taken in the name of another, who also advances part of said purchase-money, a trust will result *pro tanto,* and that the payment of the consideration may be shown by parol.

In the leading case of *Bank* v. *Carrington,* 7 Leigh, 566, it is held: "Where land is purchased and paid for by one person, and the conveyance is taken to another, the law will imply a trust for the benefit of the former; and such purchase and payment may be proved by parol evidence."

So, also, in the case of *Walraven* v. *Lock,* 2 Pat. & H. p. 547, it was held: "If one purchases a piece of land, and takes a deed in his own name, under a parol agreement with another that it is for his benefit, and that he may, within a reasonable time, by paying a certain sum, become entitled to the land, a trust is raised in favor of the latter, and the agreement may be proved by parol evidence. The statute of frauds has no application to such a case." See, also, *Borst* v. *Nalle,* 28 Gratt. 423.

This question has, however, been before this Court in a case very similar in its facts to the one under consideration, to wit, the case of *Murry* v. *Sell*, 23 W. Va. 475. It was held: "Where A. enters into an executory contract for the purchase of land, and afterwards, but before the title is conveyed to him, or any part of the purchase-money is paid, he agrees with B., a stranger, that if he will pay one half the purchase-money he shall be an equal owner in the land, and B. consents, and thereupon he and A. pay the whole purchase-money to the vendor, each paying one half thereof, and the legal title is subsequently conveyed by the vendor to A., it was held that such payment by B. created a resulting trust in his favor, and the conveyance of the legal title thereafter to A. made him trustee for B. as to one half the land; and that trusts of this character are exempted from the statute of frauds, and it is competent for the real owner to prove his payments of the purchase-money by parol evidence, even though it be otherwise expressed in the deed."

In *Heiskell* v. *Powell*, reported in the same volume, page 717, it was held : "Where P. enters into an executory contract for the purchase of land, and at the time or afterwards, before the title is conveyed to him, or any part of the purchase-money is paid by P.'s agreement, H., for F. W. H., pays one third of the purchase-money, and P. and H. pay the residue, and the legal title is subsequently conveyed to P., such payment by H. for F. W. H. creates a resulting trust in favor of F. W. H., and such conveyance of the legal title to P. makes him trustee for F. W. H. as to one third of said land."

While it is true that it does not appear that any money was paid directly by Seiler to either Snider or Krumrine, yet it does appear that said Seiler paid a valuable consideration to Roudenbush & Mohn in consideration of their advancing for him the purchase-money due on said land. It was not necessary that John R. Seiler should actually with his own hand count down the money either to Snider or Krumrine's executor in order that a trust should result in his favor when the deed was made to Roudenbush & Mohn. It is sufficient if the evidence shows that he gave Rouden-

bush & Mohn the equivalent of money, or what they were willing to receive as such.

Mr. Schoonover, in his deposition, states that they told him they were to pay the purchase-money due on the land to Mr. Snider, and also the costs of the suit then against the land, and that Seiler was to retain one third of the land in consideration of the buildings and improvements he had made thereon, together with what he had already been paid thereon ; and the witness Hansford says they told him that they were to have two thirds of the land, and said Seiler was to have one third; and upon paying the purchase-money due to said Snider, and five hundred dollars to Krumrine's estate, that their one third each would not then cost them as much as Seiler's one third would cost him, or had cost him.

This testimony shows that they were satisfied to make the advancement of the purchase-money in consideration of what they were receiving from Seiler, and, under the circumstances, having taken a deed to themselves, a trust as to one third of said property results in favor of said Seiler, and the Circuit Court should have so decreed.

For these reasons the decree complained of is reversed, and the cause remanded to the Circuit Court of Tucker county for further proceedings to be had therein, and the appellees must pay the costs of this appeal.

REVERSED.   REMANDED.