# CHARLESTON.

CURRENCE v. WARD et al.

(DENT, JUDGE, *concurring.*)

Submitted February 2, 1897—Decided April 21, 1897.

1. EXPRESS TRUST—*Constructive Trust.*
   Express and constructive trusts distinguished. (p. 369.)

43 367
43 556
43 754
43 367
45 249
43 367
46 254
43 367
47 66
47 67
47 315
47 550
43 367
48 666
43 367
52 222
52 322
52 323

2. EXPRESS TRUST—*Judicial Sale—Equity.*

Where one before a judicial sale agrees to buy in the land in his name for the benefit of the debtor, the debtor to pay the purchase money, and keep the land, this is an express trust, enforceable in equity. A second sale under decree and purchase by same purchaser will not defeat the trust. (p. 371.)

3. EXPRESS TRUST—*Constructive Trust—Parol Evidence.*

Neither an express nor constructive trust in lands need be created, declared, or proven in writing in this State, but may be shown by oral evidence. (p. 370.)

4. EXECUTORY AGREEMENT—*Parol Agreement—Enforcement of Trust—Equity.*

Where one buys land under executory agreement, and afterwards, before legal title is passed, verbally agrees that if another will pay the purchase money he shall have the land, and that other does so, the trust is enforceable in equity. No agreement or payment, after legal title passed, will be valid without writing. (p. 370.)

5. CONSTRUCTIVE TRUST—*Resulting Trust—Title.*

Where one party pays all or part of the purchase money for land, and title is taken in the name of another, a constructive trust, called a "resulting trust," arises in favor of the party paying as to the whole land, or *pro tanto.* (p. 373.)

6. RESULTING TRUST—*Trust pro tanto.*

Where one pays part of the purchase price of land, and a deed is taken in another's name, so that a resulting trust arises, so it is certain what amount the one claiming under the trust paid, whether the part paid be an exact divisor of the whole or not—that is, whether it be an aliquot part or not—is immaterial, this will be a trust *pro tanto.* There must be certainty as to the interest in the land. (p. 374.)

7. TRUSTS—*Real Estate—Personal Property.*

A trust may exist in any property, real or personal, which is, in the eye of a court of equity, property of value. (p. 376.)

Appeal from Circuit Court, Randolph county.

Bill by Melvin Currence against Wirt C. Ward and others. Decree for plaintiff, and defendants appeal.

*Affirmed.*

A. M. POUNDSTONE, L. D. STRADER, W. T. ICE and BROWN JACKSON & KNIGHT, for appellants.

BUTCHER & HARDING, DAYTON & DAYTON and A. C. SNYDER, for appellee.

BRANNON, JUDGE:

Under decree of the Circuit Court of Randolph county certain land of Melvin Currence was sold, and purchased by William L. Ward and Wirt C. Ward, and afterwards, under decree of resale for non-payment of purchase money, the land was again sold, and purchased by the same purchasers. The sales were confirmed. Before all the purchase money had been paid, or a deed made conveying the land to the purchasers, Currence instituted the present suit against the said purchasers and Lewis C. Conrad, to whom they had sold the land, alleging that the Wards had purchased in the land for his benefit, and that Conrad purchased with notice of his rights, and seeking to have it decreed that said purchase by the Wards was in trust for his benefit, and to set aside the sale by the Wards to Conrad; and the decree gave Currence the relief he asked, and the executor of William L. Ward appealed.

There is some question, under the arguments in this case, as to what kind of a trust is alleged to exist in this case. The subject of trusts under equity jurisprudence is a very complicated and difficult one, the fountain of inexhaustible litigation. The books on trusts in their definitions are, necessarily perhaps, variant and confused. I think that for simplicity's sake we should divide trusts into two classes, calling one direct or express trusts (that is, trusts springing from the agreement of the parties), and the other constructive or implied trusts (that is, trusts created by equity law). Under the latter subdivision will fall all trusts, that are called implied trusts, constructive trusts, trusts arising from fraud or otherwise; in short, all trusts that do not spring from the agreement of the parties. Underh. Trusts, p. 10; Rice, Real Prop. p. 595 and 2 Pom. Eq. Jur. p. 1447,—so classify trusts. Underhill says: "A declared or express trust means a trust created by words, either expressly or impliedly evincing an intention to create a trust;" and that "a constructive trust means a trust not created by any words, either expressly or impliedly evincing a direct intention to create a trust, but by the construction of equity in order to satisfy the demands of justice." See 27 Am. & Eng. Enc. Law, 3; Hill, Trustees, 55; 1 Perry Trusts, § 73. Though this is an express trust, no writing to create it or to evidence it is necessary, because

the seventh section of the English statute of frauds, requiring all declarations or creations of trust to be manifested and proved by writing, though re-enacted in many of the American states, is not included in our statute of frauds. It is well settled that before that statute in England such a trust in lands could be created without a writing, and, of course, it can be so here now. Parol declarations or creations of trust in realty must amount to clear and explicit declarations of trust; loose and indefinite expressions will not do. Hill, Trustees, 59. Such a trust must be created before the trustee obtains legal title, for, if the agreement be subsequent, it would fall under the provisions of the statute of frauds requiring the transfer or sale of lands to be in writing. 1 Perry, Trusts, §§ 77, 140; *Smith* v. *Turley*, 32 W. Va. 14 (9 S. E. 46). I think the evidence, which I will not detail, establishes the fact that prior to the first sale under decree, the purchasers and Currence had an agreement and understanding by which the said purchasers were to buy in the land in their names for the benefit of Currence, and that upon his payment of the purchase money the land was to be his. This surely created a direct or express trust. 1 Perry, Trusts, § 171, *Nease* v. *Capehart*, 8 W. Va. 95, fully discusses and fully sustains this. See, also *Walraven* v. *Lock*, 2 Pat. & H. 547; *Borst* v. *Nalle*, 28 Grat. 423. This being so, it seems to me the right of Currrence to relief is plain.

Under the agreement between him and the Wards, he paid the cash payment under the first sale, and from time to time he made different payments, amounting to one thousand three hundred and five dollars and seventy cents, leaving yet unpaid a considerable balance under the judicial sale. There is no principle of equity which shall debar him if he pays the balance of the purchase money, and exonerates the Wards from their obligations touching it, from having this land conveyed to him. It must not be thought that the fact that the land was sold a second time will make any difference. Currence's failure to pay the money is a common misfortune oftener than it is a fault of debtors under distress, and should not work, and in equity will not work, a forfeiture of his rights. Courts of equity do not look with favor upon any kind of forfeiture losing parties substantial rights

justly vested in them. All that the Wards can claim in a court of equity is that they be left perfectly unharmed from the obligations, which as purchasers, they assumed in this case. Being made whole, what further equity have they? They will have lost nothing, from a money point of view, though this act of their friendship may have cost them some personal anxiety, vexation, and trouble. If, before this second sale, the Wards had distinctly notified Currence that he was in default, that their friendship had gone as far as they intended it to go, that he must look out for his own interest, and that they would at the second sale purchase on their own account free from any further trust, that second sale might have (I do not say that it would have) destroyed the trust, and exonerated them from further obligation under it. But they did not do so. They simply became purchasers again, and the same relation of trust continued after that second sale. As is said in the opinion by JUDGE SNYDER in *Murry* v. *Sell*, 23 W. Va. 475: "When the relation of trustee and *cestui que trust* is once established, no subsequent dealing with the trust property by the trustees can relieve it of the trust as between him and his *cestui que trust*, is too well established to require argument. *Vangilder* v. *Hoffman*, 22 W. Va. 1; *Lawrence* v. *Du Bois*, 16 W. Va. 443." Therefore the subsequent sale of the land for the purchase money due from Hull, and the repurchase by Ward at such sale, did not devest or affect the equitable title of the plaintiff to one-half the land. Upon said repurchase Ward held the legal title as trustee for one-half the land just as he did under the first purchase. The books sustain this proposition. Hill, Trustees, 60.

It is said that after this second sale Currence surrendered to the Wards possession of the land, and that this ought to debar him from relief. But I do not think so. It was under the certainty of expulson by a writ of possession. It is also said that his payment of rent to the Wards, which seems to be not a fixed rent, but some grain from the mill, is another circumstance to debar Currence from relief. Perhaps I ought not to say that it is presented as a bar; it is not a bar. These are circumstances, it is true, against Currence, but only evidential in character, tending to deny the existence of any trust agreement, but they do

not operate as forfeiture or release or abandonment of the lawful rights of Currence if the trust be once clearly established, for when once a trust is clearly established a court of equity looks at the substance, will not defeat it upon light and trivial grounds, but will accord to each party his just and lawful right, preserving them according to the original contemplation of the parties. When once a trust is established, it continues to be a trust unless it is intentionally released, or is defeated by laches. 27 Am. & Eng. Enc. Law, 310, 321. If this second sale were even procured by the Wards with intent to defeat Currence's rights, it would not, nor would their sale to Conrad, defeat the trust in favor of Currence, for the acts of the settlor or trustee cannot defeat the trust. It requires the full consent of all the parties to defeat it. 1 Perry, Trusts, § 104; *Heiskell* v. *Powell*, 23 W. Va. 717. One who buys at a judicial sale under oral agreement for the benefit of another will be held trustee. *Denton* v. *McKenzie*, 1 Am. Dec. 664; *Miller* v. *Antle*, 92 Am. Dec. 495. The fact that it is a judicial sale makes no difference. *Beegle* v. *Wentz*, 93 Am. Dec. 762. Under the head of an express trust I consider Currence entitled to relief.

But suppose there were no such agreement at the time of the first sale creating such express trust. It is conceded by the Wards that after the sale they did tell Currence that if he would pay the purchase money on the land he should have his land back. He did proceeed to pay considerable amounts of money in execution of this agreement. What is the law under this head? It might occur to any one that, as the equitable right had vested under the sale in the Wards, this arrangement between them and Currence was nothing but a sale of the land, and, not being in writing, void, under the statute of frauds and perjuries; but that idea is untenable under three cases in this Court. *Murry* v. *Sell*, 23 W. Va. 475; *Heiskell* v. *Powell*, Id. 717; *Setler* v. *Mohn*, 37 W. Va. 507 (16 S. E. 496). In the *Murry-Sell Case*, it is laid down that if A. entered into an executory contract for the purchase of land, and afterwards, before the title is conveyed to him, or any part of the purchase money is paid, he agrees with B., a stranger, that if he will pay half the purchase money he shall be an equal owner, and they both pay equally, and the legal

title is subsequently conveyed to A., there is a resulting trust in favor of B.; and that this trust is exempt from the statute of frauds, and it is competent for the real owner to prove payment of the purchase money by oral evidence. Such a trust as this, commonly called a "resulting trust," was exempt from the statute of frauds expressly by the English act, and never was under that act, and our act is not affected by it. I thought at first that this was questionable on the principle stated in *Smith* v. *Turley*, 32 W. Va. 14 (9 S. E. 46), that the resulting trust must arise at the time the title is taken, and no subsequent oral agreement or payment will create it, as under our present view this agreement took place after the sale and the birth of the rights of the purchasers; but the title thus acquired was only an equitable title, and the legal title had not been conveyed to the purchasers at the date of this agreement, and I find from the books that, if the arrangement be made before the legal title vests in the alleged trustee, it becomes an enforceable trust. Perry, Trusts, § 133. So, under this head, it is nothing but an ordinary case of purchase in the name of one man, and the purchase money paid by another; and the rule is well settled that there arises a resulting trust in behalf of him who pays the money. *Pumphrey* v. *Brown*, 5 W. Va. 107; *Hamilton* v. *Steele*, 22 W. Va. 348. He is the owner of the land. Nor is it necessary that he pay the whole purchase money under that arrangement. If he pay part, and fails to pay the residue, or becomes unable to do so, the mercy of a court of equity will not allow his right to utterly perish, but, after shielding the trustee from loss by requiring the property to first indemnify him against any balance of purchase money binding him, will give the residue to the party making partial payment. He is a beneficiary *pro tanto*: that is, to the extent of his payment of purchase money. *Seiler* v. *Mohn*, 37 W. Va. 507 (16 S. E. 496); opinion in *Murry* v. *Sell*, 23 W. Va. 480; 1 Perry, Trusts, §§ 126, 132.

Observing in the books expressions to the effect that to raise a resulting trust the money paid by the one claiming it must be an aliquot part of the whole, and Currence not having paid an aliquot part, it occurred to me that this might be an obstacle to relief, but an examination has sat-

isfied me to the contrary. So it be clear what amount is paid, it would seem to be immaterial whether it be an aliquot part of the whole. Forty-nine is just as well a certain fraction of one hundred as is fifty. This theory likely originated in a satement by Lord Hardwicke in *Crop* v. *Norton*, 9 Mod. 233. He likely referred, not to payment of part of the purchase money, but to where several paid, intimating that there could be no resulting trust in favor of two or more paying, but only where one was the beneficiary. This even is not a tenable view, because in the later case of *Wray* v. *Steele*, 2 Ves. & B. 388, it was held that there could be a resulting trust in favor of several. This is now established. Hill, Trustees, 92, 93; 1 Perry, Trusts, § 132. As to Lord Hardwicke's statement, Chancellor Kent said it was not correct when only a single individual claimed the benefit, for the cases recognized the trust where the money of A. formed only a part of the consideration for the land purchased in the name of B. The land in such case is to be charged *pro tanto*. That is the case of *Botsford* v. *Burr*, 2 Johns, Ch. 405. Judge Story adopts the principle of the later cases. *Powell* v. *Manufacturing Co.*, 3 Mason, 347, Fed. Cas. No. 11,356. Some of the cases cited to sustain this proposition do not. *Baker* v. *Vining*, 50 Am. Dec. 617, only holds, like our case of *Shaffer* v. *Fetty*, 30 W. Va. 248 (4 S. E. 278), that it must appear what amount the party claiming the trust paid, and that, where that was uncertain, no trust would be raised. *Fleming* v. *McHale*, 47 Ill. 282, cited for the proposition, is flatly against it, holding that, where the first payment is in full of one installment of purchase money under the contract, as in the present case, the rule of aliquot payment is complied with, whether the part paid is an exact divisor of the whole purchase price or not. *McGowan* v. *McGowan*, 74 Am. Dec. 668, has no bearing on part payment of purchase money, but holds that the payment must be made for a distinct part or interest in the land. The books are indefinite as to this aliquot part expression; sometimes referring to a definite part of the land, sometimes of the money. See full note to *Neill* v. *Keese*, 51 Am. Dec. 753. Though the theory on which a resulting trust rests is that the payment made becomes converted into land, and is not a lien on it, that refers rather to the time of payment (that is, that it

must be before the legal title is taken), rather than to the portion of the money paid, or of the interest in the land springing therefrom; for where both have paid they can have joint interest in the land proportionately. to the money paid (that is, the party who is to hold as trustee and the beneficiary), just as where there are two or three beneficiaries paying separate amounts. So if one pay forty-nine dollars and another fifty-one dollars, their interests would be 49-100 and 51-100 respectively, just as reasonably as if each had paid fifty dollars. It is only necessary that it be clearly shown what part he has paid (*Shaffer* v. *Fetty*, *supra;* Hill, Trustees, 92, note 2; 1 Perry, Trusts, § 132); but there must be certainty as to the interest in the land.

Counsel for appellants suggest that, as the title and disbursement of the proceeds are under the control of the court in the creditors' suits in which the land was originally sold, Currence should not bring an independent suit, but go into that to have his relief. Obviously that would be the introduction into that suit of matter wholly foreign to it. Though no title but an equitable one has yet passed to the purchasers under the sale, yet they had made a sale to Conrad, and Currence had right, as they denied his rights, to sue to have his rights adjudged and declared, and to vacate the sale made to Conrad. If he, after such adjudication in favor of his rights, should pay the purchase money, he would be entitled to the land, and the court vested with the title would, upon a proper showing by him, confer title upon him. He is not compelled, under these circumstances, to wait until a deed shall have been made. He had the right to ask a judicial sentence binding upon those claiming adverse interests to him. It may be thought that, as no deed has been made, but title is in abeyance in the hands of the court, no trust has arisen as yet; but note that the right to have the title in the power of the court passed is dependent upon who has that equitable title arising under the sale. On the face of the papers the Wards are possessed of it, and the court will pass the legal title to them. The question arises, who is entitled to go before the court and have title passed,—the Wards or Currence? Or, after its conveyance to the Wards, whether Currence is the real owner. The right to the legal title depends upon the question whether the Wards or Currence are en-

titled to it. That equitable title is a sufficient title in the eyes of a court of equity to be the subject of a trust, sufficient to enable a court of equity to declare the right as to it; for there can be a trust under a legal or an equitable estate in anything which a court of equity recognizes as a subject of property. 27 Am. & Eng. Enc. Law, 24; Underh. Trustees, 9, note; 1 Perry, Trusts, §§ 67, 96. If A. buy an executory title with B.'s money, cannot B. sue A. and the vendor before deed made to declare the trust and have the title made to him?

The evidence is conflicting in this case as to whether Conrad, before his purchase, had notice of Currence's rights. Currence swears positively that he gave him notice; Conrad just the reverse. There is some evidence corroborating Currence. The court probably found for Currence on this issue of fact, but, no matter whether it did or not, the legal title had not passed. Conrad had not paid all of his purchase money and obtained his deed. This suit itself was a notice to him of Currence's claim. He is not, therefore, a complete purchaser for valuable consideration. The first sale was on the 11th of January, 1886; the second sale on the 14th of September, 1887. This suit was brought in December, 1888. While it is true, as laid down in *Smith* v. *Turley*, 32 W. Va. 14 (9 S. E. 46), that long lapse of time will defeat the enforcement of such a trust, this short delay would not do so. Being purely cognizable in a court of equity, the statute of limitations has no reference to it. *Heiskell* v. *Powell*, 23 W. Va. 718.

We are asked to open up the matter of rental found by the commissioner against the Wards for the property while in their posession. We see no reason for so doing in this Court. Under the present statute they may except to the commissioner's report by leave of the circuit court, or show cause for a recommitment of that question to a commissioner. The court will have discretion, upon proper cause shown, to allow further hearing before the commissioner of that question.

One of the briefs of counsel in this case would treat this case on the theory that the Wards were but sureties of Currence in this transaction, and that when they bought the second time they could and did buy free from any obligation to Currence, on the theory that sureties may buy to

protect themselves. But this is not the real cast of the case. The Wards were simply purchasers under a trust, and the transaction can be treated only in that light,—the light in which it is well defined in equity jurisprudence. Relief must be given or refused upon that basis, as that is the condition in which the parties place themselves.

One of the counsel in this case has argued that the demurrer ought to have been sustained, because of the want of certainty in the bill, treating it as a bill to enforce a constructive or resulting trust only; claiming that for that purpose the bill is uncertain and indefinite. It is useless to enlarge upon this subject. The bill sets up enough to make an express and also a constructive trust, and is good. I rest the case on the basis of trust, not on fraud. Not every refusal to pay or live up to a contract is fraud to give jurisdiction in equity. There must be fraud in the inception—in the procurement—of the contract. I do not think the position assumed as one point in brief of counsel that the agreement would be good treated as a verbal contract under the doctrine of part performance will hold good. Treating it simply as a sale, no possession was taken under it. Currence simply remained in possession under his old right, but did not enter under the new. Affirmed.

DENT, JUDGE : (*concurring*).

JUDGE BRANNON and myself have arrived at the same conclusion in this case, but on different grounds; he holding that the agreement between the Wards and Currence created an express trust, enforceable in a court of equity, while I place it on the jurisdiction of equity to prevent the consummation of attempted fraud; both, in the end, however, amounting to the same thing, simply depending on a different mode of reasoning; my position being that the Wards had not as yet acquired any vested trusteeship, and the only thing they did have was that by the trust and confidence reposed in them by Currence they were in position to take undue advantage of him, and thus perpetrate a fraud upon him by acquiring and disposing of the legal title to his property. They had neither the equitable nor legal title, nor even the mere right to demand a conveyance of the same without being guilty of a breach of confidence; yet they were in a position to do so. The mere

fact that a person is in a condition to create a trust in himself would hardly elevate him to the position of trustee, although his advantageous position, being one acquired by trust and confidence, would justify the interference of a court of equity to prevent the consummation of threatened wrong. Courts of equity prevent the perpetration of, as well as relieve against, consummated frauds. As defined by Story: "Fraud, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, or are injurious to another, or by which an undue advantage is taken of another." Story, Eq. Jur. § 187. Currence, while holding the equitable title, not having fully paid the purchase money, was not in position to demand the legal title then in abeyance by the decree of confirmation, and, if the Wards had remained quiescent, would have had no right to apply to a court of equity for relief; but when the Wards, acting in breach of the confidence reposed in them, took the possession of the property away from him, and made an attempted sale thereof to Conrad, they were guilty of fraud in the sense of a court of equity; and whatever rights, little or great, they acquired by their unconscientious conduct, they must be deemed to hold as trustees for Currence as to any vested rights, and the same may be said of their vendee, who, with eyes open, purchased their interests. 1 Perry, Trusts, § 169. This trust, however, arising from breach of confidence is constructive and not express. Although it is true that an express trust would arise by the agreement had between Wards and Currence prior to the sale, yet Currence, not having paid the purchase money, nor now showing himself in condition to pay, is not entitled to enforce such trust, and the court acquires no jurisdiction by reason thereof, but the jurisdiction is from the fraudulent conduct of the Wards in assuming the rights of absolute owners of the property in violation of their agreement. In the case of *Mulholland* v. *York*, 82 N. C. 513, the supreme court of North Carolina, in commenting on a parol arrangement by which an attorney for a debtor was to buy the debtor's land at an execution sale, and hold the same for the debtor's benefit, and reconvey on being reimbursed, says: "In our opinion, a trust may be thus formed,

and it will be enforced on the ground of fraud in the purchaser in obtaining the property of another under a promise to allow him to redeem, and attempting afterwards to appropriate it to his own use." In *Turner* v. *King*, 2 Ired. Eq. 132,—a case in which the defendant verbally agreed with the plaintiff to buy in his lands about to be sold under execution, and allow him to redeem on repayment of the purchase money, and this being known to the bidders, two of them desisted, and the defendant bought for one hundred and ninety dollars lands worth four hundred and fifty dollars,—Daniel, J., for the court, says: "The attempt of the defendant to set up an irredeemable title after the agreement he entered into is such a fraud as this court will relieve against." In *Vannoy* v. *Martin*, 6 Ired. Eq. 169,—a similar case to the foregoing,—the court said: "It would be a gross fraud upon the plaintiff if the said defendant were permitted to set up an absolute title to the land, which it is the duty of a court of equity to prevent, and in the way of preventing which the act making void parol contracts for the sale of land does not stand." The court, in the case of *Mulholland* v. *York*, cited, in commenting on these and other like cases, says: "These adjudications proceed upon the assumption that the debtor, trusting to the good faith of the party promising, and lulled into a false security, may have desisted, in consequence of the assurance, from making other efforts to prevent the sale and sacrifice of his property; and it would be a fraud in the purchaser to take advantage of the confidence, and hold it thus acquired for his own use, and to the injury of the owner." All similar cases that I find base equity jurisdiction on the grounds of fraud, and, as a resultant thereof, hold the attempted perpetrator a mere trustee for the benefit of his unwary and confiding victim as to any tangible rights acquired. *Troll* v. *Carter*, 15 W. Va. 567; 1 Perry, Trusts, § 171.

Appellants' counsel object seriously to the word "fraud" as applied to the attempt of the Wards to get the lands in controversy at about one-half their true value, and prefer, if relief be granted the appellee, Currence, it be under the head of "trust," the term being less opprobrious, as quinine is less bitter in capsules or sugar-coated tablets. To this I have no objection, the result being the

same, and therefore allow the opinion prepared by my associate to be substituted for my former opinion, with the reservation that it is a distinction without a difference, and that fraud, in the sense of a court of equity, is fraud, it matters not under what language it may be concealed.

*Affirmed.*