SMITH v. UNITED STATES FIDELITY & GUARANTY CO.

(Circuit Court of Appeals, Fourth Circuit. May 22, 1908.)

No. 760.

TRUSTS—CONSTRUCTIVE TRUSTS—RIGHT OF ACTION TO ENFORCE.

Where a surety which agreed to advance money in connection with the purchase of certain mining property by the principal, for which it was bound as surety, and in a certain contingency was to receive a conveyance of such property, to operate the same, account for the proceeds, and, when reimbursed, to reconvey to its principal, by refusing to make agreed payments caused the property to be resold and obtained the title from the court, it took and held the same as a trustee only, and was subject to a suit by the principal for an accounting, and to enforce the trust in accordance with the agreement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 153.]

Appeal from the Circuit Court of the United States for the Eastern District of Virginia, at Richmond.

A. L. Holladay and William E. Bibb (Bibb & Bibb, on the brief), for appellant.

J. Kemp Bartlett and Jas. R. Caton (H. B. Caton, on the brief), for appellee.

Before PRITCHARD, Circuit Judge, and McDOWELL and DAYTON, District Judges.

DAYTON, District Judge. The appellant, Smith, filed his bill against the appellee company in the circuit court of Louisa county, Va., on December 19, 1904. The cause was by defendant removed to the Circuit Court of the United States for the Eastern District of Virginia, and on April 3, 1905, a demurrer was entered to the bill, which on February, 5, 1907, was sustained, and the bill dismissed, with costs. From this decree the plaintiff, Smith, has taken this appeal.

The allegations of the bill and the exhibits filed therewith embrace 68 pages of the printed record; the bill alone requiring 23 such pages. These allegations are largely a detailed account of the involved transactions had by plaintiff with various parties and corporations touching the mining of pyrites under a tract of 394.22 acres of land in Louisa county, Va. As our duty requires us to review only the action of the court below holding these allegations insufficient in law to constitute a cause of action, we cannot see what good would be accomplished by either setting forth the bill, or attempting to fully epitomize its allegations or charges. We deem it sufficient for our purpose to say that at a judicial sale had of said property on January 23, 1901, the appellant, Smith, became the purchaser of the property at the price of $115,550, paying $5,000 in cash, and executing a bond with appellee, the United States Fidelty & Guaranty Company, as surety, for the balance; that on March 4, 1902, Smith and the fidelity company entered into a contract, setting forth the suretyship of the latter upon said bond, its payment and advancement of certain sums for Smith, and its purpose to advance additional sums to pay debts, including a contingent liability of $35,000 in litigation upon appeal to the Supreme Court of

Appeals of Virginia, in consideration whereof it was agreed, among other things:

"(2) In the event that the appeal now before the Supreme Court of Appeals of Virginia shall be decided adversely to said Smith, and the company shall be called upon to pay by order of the court, or in the event that the litigants shall compromise their differences and the company shall in consequence be called upon to pay, the amount of said affirmed decree or the amount as agreed on in said compromise, and shall in fact pay, the said Smith shall, if so requested by said company, contemporaneously with such payment by the company, sign an order of substitution, whereby said company shall be substituted as purchaser of said mining property as originally reported by the commissioner as having been sold to said Smith, so that said company shall, in consequence thereof, be subrogated to whatever rights have accrued to said Smith as purchaser of the property aforesaid."

"(5) That as soon as the company has been reimbursed all moneys that it may have advanced or paid out in any way whatever for or on behalf of said Smith, or for any obligation it may have assumed, directly or indirectly, on account of said Smith, whether growing out of said purchase at commissioners' sale or otherwise, including all interest, expenses, costs, charges, and counsel fees, if any, shall, upon the repayment of the same, reconvey back to said Smith the said property, by good and sufficient deed, so as to revest in him, the said Smith, all the right, title, interest, and estate, originally held by him as purchaser of said property at commissioner's sale, and it shall further deliver over to him any shares of stock in the Pyrites Mining & Chemical Company of Virginia that may have come to it by reason of any of the advances heretofore made by it, or that may be hereafter made by it, including all stock now held by it, or that may hereafter come into its hands by reason of any such advance or advances; the spirit and intent of this agreement being, so far as it relates to the working of the property by the company, that it shall work the same and develop it in its own way, unhampered by said Smith in any way whatever, and that as soon as it has reimbursed itself for all moneys it has paid out or expended on account of its obligation on the purchase-money bond of said Smith to reconvey the property back to him to the same effect as if it had held said property in trust for his express benefit.

"(6) That Jacob S. Rosenthal shall act as attorney for the company in carrying out on its behalf all of the requirements of this contract, on the express condition, however, that the charges for his services, whether legal or otherwise, shall be borne and paid by the said Smith, and not by the company."

The plaintiff's bill, after having set forth this contract, charges in minute detail that the defendant company, in accordance therewith, did take charge of said property, relieved him from all control thereof, refused him access to the premises or to inspection of its books of account, employed an incompetent manager, who negligently and ignorantly destroyed the internal operations of the mines by taking out the supporting pillars, expended large sums of money wantonly and unnecessarily, all of which it charged up against him, but of which it refused him an account, and then deliberately set about to free itself from the trust obligation contained in said contract by failing and refusing to pay the $35,000 decree against plaintiff when it had to be paid, as it had contracted to do; but, on the contrary, it allowed rule for resale of the property to be sued out by the commissioner, and took advantage of his helpless condition in the premises to coerce him into signing a new contract rescinding all others, releasing all claims against the company, agreeing to convey by deed to it his interests therein, which he charges he did, and suffered decree to be entered substituting the company as purchaser instead of himself, and directing

the commissioner to convey to it, instead of to him, all of which it is charged was done in order to secure said company to fulfill its original agreement contained in said contract of March 4, 1902, to pay his purchase money in case the litigation touching it should end, as it did, by requiring its payment.

The new contract between Smith and the company, the deed of Smith and wife to it, the decree of the circuit court of Prince William county, and the deed of Caton, its commissioner, substituting the company to the rights of Smith as purchaser, all executed and entered within 10 days of each other, are exhibited with the bill. This new contract, dated May 15, 1903, while it purports to rescind former agreements, to bind Smith to convey all his interest in the property to the company, and to release the company from all demands of his against it, does reserve to him an option to purchase the property on or before July 1, 1904, following, for a sum sufficient to repay expenditures made by the company and interest, and secured to him right to examine the accounts, and that any dispute arising in regard thereto should be settled by arbitration. The company further agreed during the time not to shut down operations and to allow Smith the privilege of exhibiting the property to bona fide prospective purchasers in company with the resident superintendent, not to exceed once each month and upon two days' notice to the company at its office in Baltimore. The bill distinctly charges that Smith did secure a bona fide purchaser for the property in his interest within this period, and over and again sought to exercise the privilege of having such purchaser examine the property, but was in effect buffeted from pillar to post by the company at Baltimore informing him that the property was in condition for inspection and then being refused such inspection by the resident manager, he declaring it not to be in condition to be inspected, and that in this way he lost out in the negotiation.

For the purposes of passing upon the demurrer, all the allegations of this bill must be taken to be absolutely true. From them it would seem clear that when the defendant company executed the contract of March 4, 1902, it lost its position as surety simply. By this contract clearly was established a trust in which it became the trustee. As creditor and surety it had clear right to demand the sale of the property or the intervention of equity by means of a receivership to manage the same so as to pay its debts and liquidate its liability. It did not do this; but, on the contrary, took possession of the property, undertook control of its management and further development, agreeing to furnish further moneys for the purpose and with the express understanding that such control and possession should be confirmed in it by Smith signing a subrogation order whereby it should be substituted to his rights to the property itself as purchaser, but always with the understanding that reconveyance should be made by it when it had worked out its debts, advancements, liabilities, and expenses. A trust could not be more completely established. This trust relation once established, the relation of the parties to each other became entirely changed.

It is not necessary for us to enter into any extended discussion of legal principles governing such relation. They are too well settled to be open to question. In assuming the control and management of this

property under this contract with its debtor, this company assumed a legal obligation to carefully and prudently conduct the business with the sole view of making it pay out the debts and with no sinister purpose to destroy it, depreciate its value, or by means of the trust relation acquire such control over either the property or the debtor himself as would enable it to purchase or secure the property at less than its full value. As such trustee the law required it to render also a full, true, and accurate account. No trustee is allowed to purchase the trust property at his own sale, or at any judicial sale thereof, against the interest and to the oppression of his cestui que trust. "Principles are applied almost as stern as those which govern where a sale by a cestui que trust to his trustee is drawn in question. To give validity to such a sale by a mortgagor, it must be shown that the conduct of the mortgagee was in all things fair and frank, and that he paid for the property what it was worth. He must hold out no delusive hopes. He must exercise no undue influence. He must take no advantage of the fears or poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him. 1 Bigelow on Fraud, 347." Villa v. Rodriguez, 12 Wall. 323, 20 L. Ed. 406; Russell v. Southard, 12 How. 139, 13 L. Ed. 927; Morris v. Nixon, 1 How. 118, 11 L. Ed. 69.

Deeds of conveyances absolute on their face under such circumstances have by courts of equity been held mortgages, releases of equities of redemption have been set aside, and purchases under judicial sale held to be only in furtherance, and not destruction, of the original trust. "The rule that, when the relation of trustee and cestui que trust is once established, no subsequent dealing with the trust property by the trustee can relieve it of the trust as between him and his cestui que trust, is too well established to require argument. Van Gilder v. Hoffman, 22 W. Va. 1; Lawrence v. Du Bois, 16 W. Va. 443. Therefore the subsequent sale of the land for the purchase money due from Hull and the repurchase by Ward at such sale did not divest or affect the equitable title of the plaintiff to one-half of the land." Murry v. Sell, 23 W. Va. 475. See, also, Currence v. Ward, 43 W. Va. 367, 27 S. E. 329, and Liskey v. Snyder, 56 W. Va. 610, 49 S. E. 515.

Under these well-settled rules, the decree of Prince William County circuit court, confirming title to the property in the defendant company, could not affect the trust or its liability as trustee, and in this case for the even stronger reason that the very terms of the trust agreement itself bound Smith to consent and agree to have this done.

The other grounds of demurrer have been considered, but are deemed without merit. Viewing this transaction as a trust, the sole parties in interest are Smith and the company. By reason of his absolute conveyance to it of his title, and the payment by it of the purchase money, no other parties to the controversy are either necessary or proper. The controversy is between them alone.

The decree of the court below must be reversed, and the cause remanded, with direction to overrule the demurrer and require the defendant to answer.

Reversed.